HISAW v. ATCHISON, TOPEKA & SANTA FE RY. CO.

No. 31590. April 23, 1946.

Rehearing Denied June 4, 1946.

*169 P. 2d 281.*

Pryor & Wilbanks, of Holdenville, and Carl Morgan, of Guthrie, for plaintiff in error.

Rainey, Flynn, Green & Anderson and M. M. Gibbens, all of Oklahoma City, for defendants in error.

OSBORN, J. This action was filed July 2, 1942, by Rosalie Hisaw, for herself and for Paul Leon Hisaw and Patricia Ann Hisaw, her minor children, as plaintiffs, against the Atchison, Topeka & Santa Fe Railway Company, a corporation, and Charles Kiesow, defendants, to recover damages for the wrongful death of her husband, Lonnie L. Hisaw. The case was tried to the court and a jury, and from a verdict in favor of the defendants, plaintiff appeals.

The fatal accident occurred on March 7, 1942, in the city of Guthrie, at the intersection of the defendant Railway Company's tracks and Noble avenue. The defendant Kiesow was the engineer of the train involved in the collision. The plaintiffs alleged negligence in failing to keep the intersection in good condition and to maintain in good condition warning signs and signals, and in the operation of the train at a dangerous and excessive rate of speed. The defendants, in their respective answers,

denied negligence, alleged negligence and contributory negligence on the part of the deceased, and pleaded an ordinance of the city of Guthrie requiring all motor vehicles to come to a complete stop before crossing the tracks of any steam railway in the city of Guthrie, except when such vehicles were responding to the call of a fire alarm, and excepting also police cars and ambulances responding to emergency calls.

In her reply plaintiff, after a general denial, specifically denied that the ordinance pleaded in the answers of the defendants was valid, but alleged that it was void and in contravention and conflict with the laws of the State of Oklahoma; that it had never been enforced and had been treated as null and void by all persons using the streets and highways in the city of Guthrie, and that by placing the mechanical and electrical devices at said crossing defendant had assumed the risk of keeping the same in perfect working order and was estopped from claiming any rights under said ordinance.

From the evidence it appears that Noble avenue runs in an easterly and westerly direction and, at the intersection where the collision occurred, is crossed by three tracks of the Railway Company running in a northerly and southerly direction. A short distance west of the intersection there is a small creek and from the west side of the creek to the east across the tracks there is a concrete viaduct. Noble avenue at this point is also State Highway No. 33, and the crossing of the tracks by the street beneath the viaduct at that point is a grade crossing. The crossing is a much traveled one, being used both by pedestrians and motor vehicles.

The fatal accident occurred about 4:30 o'clock in the afternoon. At that time Lonnie L. Hisaw was approaching the intersection from the west, driving a bakery truck at a speed of some 20 or 25 miles per hour, and the Railway Company's train, consisting of a motor car and one additional car, was proceeding south on the west track, its speed being variously estimated at from 20 to 40 miles per hour. It struck the truck driven by Hisaw, which attempted to cross the tracks in front of the train, inflicting injuries from which Hisaw died shortly thereafter. The weather was clear and cold.

The viaduct above referred to is some three blocks in length. The street on which is situated the grade crossing crosses Cottonwood creek under the viaduct; then curves to the north and runs north of the viaduct until it crosses the tracks, and then curves to the south and runs south of the viaduct. On each side of the Railway Company's tracks is what is known as a wigwag signal, a metal disc, some 18 inches in diameter with a red light in the center. The signal on each side faces approaching traffic, and when the train is a certain distance from the intersection the signal swings, a bell rings, and a red light in the center of the face of the disc lights up, to warn approaching drivers or pedestrians of the approach of the train. It is undisputed that at the time the accident occurred the east wigwag signal was not in perfect condition, the face of the disc being turned partly away from approaching traffic; but from the evidence it appears that the west wigwag signal was in good order and that both signals were working at the time the accident occurred. According to the evidence this west signal, because of the curve in the road after it crossed Cottonwood creek and turned to run north of the viaduct, could not be seen by an approaching driver until he was within approximately 57 feet of the signal. The signal was 22 feet west of the westernmost track so that the total distance at which it could be seen by one approaching from the west before he actually drove upon the westernmost track, would be 79 feet. The east signal was on the north side of the roadway and was visible to one approaching from the west at a greater distance than was the west signal, which was on the south side of the street. Hisaw drove his truck upon the railway tracks without making any effort to stop and apparently without observing the approach of the train, although the train had

whistled for the intersection and the bell was ringing, as was the bell on the westerly wigwag signal.

Plaintiff for reversal relies upon two contentions: First, that the trial court erred in admitting photographs offered in evidence by defendants as exhibits, over the objections of plaintiff; and, second, that the trial court erred in admitting as evidence the ordinance of the city of Guthrie, because the crossing in question was a state highway and the traffic thereon regulated by the laws of the state. We will dispose of these contentions in the order stated.

During the trial of the case the defendants, over plaintiff's objection, introduced in evidence five photographs of the grade crossing at which the collision occurred, showing the physical condition of the crossing and a view of the tracks north of said crossing, taken from points on the street at various distances west of the most westerly track.

Plaintiff asserts that in these photographs the east wigwag signal is shown with its disc facing the street, instead of being partly turned around as it was when the accident occurred; that the crossing was therefore not in the same condition as when the accident occurred, and that the photographs were improperly admitted, citing Massey v. Ivester, 168 Okla. 464, 33 P. 2d 765, and Colonial Refining Co. v. Lathrop, 64 Okla. 47, 166 P. 747. The defendants admitted, and their own witnesses testified, that the disc on the east wigwag signal was not facing the street at the time of the collision. The photographs were not introduced or admitted for the purpose of showing its condition, but to show the physical condition of the crossing. A witness for defendant, who, on March 17, 1942, made a map or plat of the crossing which was put in evidence without objection, testified that the physical condition of the crossing on that date was the same as it was prior to the date of the accident. The photographs were taken March 11, 1942, and two taken by the same photographer on that date, one of them showing the east

wigwag, were put in evidence by plaintiff. All were properly admitted. Oklahoma City v. Lycan, 193 Okla. 170, 141 P. 2d 1013; Henry Chevrolet Co. v. Taylor, 188 Okla. 380, 108 P. 2d 1024; Hale-Halsell Co. v. Webb, 184 Okla. 589, 89 P. 2d 273.

Over the objection of plaintiff, the trial court admitted in evidence an ordinance of the city of Guthrie relating to the stopping of vehicles at railway crossings. Section 1 of said ordinance reads as follows:

"Be it ordained by the Mayor and Commissioners of the City of Guthrie, Logan County, Oklahoma; It is to be unlawful for any person or persons driving or causing to be driven, any motor vehicle in the City of Guthrie to drive or cause such motor driven vehicle to be driven across or over any steam railway track or tracks in the City of Guthrie without first coming to a complete stop; provided that this ordinance shall not apply to automobiles or other motor driven vehicles responding to any alarm of fire and shall not apply to police cars responding to emergency calls, or to motor driven ambulances when responding to an emergency call."

Section 2 makes the violation of the ordinance a misdemeanor with a penalty of a fine of not less than $5 and not more than $20. The trial court instructed the jury that if it found from the evidence that deceased was guilty of a violation of said ordinance, such violation would constitute negligence per se, but that the jury could take into consideration the facts, as established by the testimony of witnesses, that said ordinance was never enforced and was not generally known to be in existence by the drivers of motor vehicles in the city of Guthrie. Plaintiff urges that the admission of this ordinance and the giving of this instruction were erroneous and highly prejudicial to her. Plaintiff contends that, the crossing in question being on a public highway, the city was without power to enact the ordinance in question as to the crossing involved, but that the power to regulate the travel of vehicles upon and at said crossing was solely in the Legislature. Principal reliance is placed on Constant

v. Brown, 189 Okla. 147, 114 P. 2d 477, wherein we held invalid an ordinance which gave all traffic east and west through the city of Blackwell right of way over traffic going north and south, and which ordinance we held in effect abrogated Rule 7 of the Rules of the Road, 69 O.S. 1941 § 583. The facts in that case are so variant from the case at bar that we consider it inapplicable.

11 O.S. 1941 § 657 empowers the city council to

" . . . regulate, prevent and punish the riding, driving or passing of horses, oxen, mules or other teams, or any vehicle, over, or upon, or across sidewalks, or along any streets of the city."

11 O.S. 1941 § 669 provides as follows:

"The council shall have power to regulate levees, depots, depot grounds, and places of storing freight and goods, and provide for the passage of railways through the streets, and public grounds of the city; *also to regulate the crossings of railway tracks, and to provide precautions and prescribe rules regulating the same,* and to regulate the running of railway engines, cars, and trucks within the limits of said city, and to prescribe rules relating thereto, and to govern the speed thereof, *and to make any other and further provisions, rules and restrictions to prevent accidents at crossings and on the tracks of railways* and to prevent fires from engines."

47 O.S. 1941 § 22.11 (S.L. 1941, p. 185, § 12) recognizes the power of municipal corporations to enact rules for the regulation of traffic upon streets where the traffic is heavy and continuous, and to regulate the speed of motor vehicles within their corporate limits.

In Constant v. Brown, supra, and in Westlake v. Cole, 115 Okla. 109, 241 P. 809, and Yellow Taxicab & Baggage Co. v. Pettyjohn, 157 Okla. 232, 11 P. 2d 487, we held that ordinances requiring motor vehicles to stop before entering streets designated as boulevards were valid traffic regulations enacted by the municipality to protect and expedite traffic. It is conceded, in fact, urged, by plaintiff that the crossing at which the fatal accident occurred was heavily traveled and that the danger attendant upon the passage of trains across such heavily traveled highway was rendered more serious by the overpass and the curved approaches to the crossing. The statutes above referred to sufficiently granted to the city power to enact the ordinance above quoted in order to provide for the safety of its citizens. As applied to the crossing involved in the instant case, it was unquestionably a valid and reasonable regulation. Whether it was valid and reasonable as to some little traveled street in a sparsely inhabited portion of the city is a matter with which we are not concerned in this case. A general ordinance may be unreasonable when applied to one state of facts or to one particular locality, and reasonable when applied to another set of facts or to another locality, and the fact that it may be unreasonable as to one particular place does not necessarily render it invalid as to all. Dillon, Municipal Corporations (5th Ed.) § 591; McQuillin, Municipal Corporations (2nd Ed.) §§ 697, 698, and 862; Independent Pennsylvania Oil Co. v. Mayor and Common Council of the City of Gloucester, 102 N. J. L. 502, 134 Atl. 554; Spencer v. City of Medford, 129 Ore. 333, 276 P. 1114; Wells v. Town of Mt. Olivet, 126 Ky. 131, 102 S.W. 1182. In the last cited case the court said:

" . . . An ordinance general in its scope may be adjudged reasonable as applied to one state of facts, and unreasonable when applied to circumstances of a different character. In recognition of these general rules, it is necessary that the plaintiff shall make out a clear case to authorize the court to interfere with the police powers of a municipal corporation when exercised in the enactment of ordinances. McQuillin on Municipal Ordinances, secs. 185, 186, 327. The reasons for this rule doubtless rest upon the theory that it is often difficult to decide as a general proposition whether an ordinance is or is not reasonable or oppressive; and this question can only be determined by applying it to the facts of a particular case . . . "

232

The city ordinance as to the railway crossing involved in the instant case was a valid regulation and the trial court did not err in so instructing the jury.

Affirmed.

GIBSON, C.J., HURST, V.C.J., and BAYLESS, WELCH, and DAVISON, JJ., concur. RILEY, J., dissents.