**ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, a corporation, and Leo McKinney, Plaintiffs in Error,**

v.

**Frankie Nancy DAVIS, Administratrix of the Estate of Loyd Frank Davis, deceased, Defendant in Error.**

**No. 40615.**

Supreme Court of Oklahoma.

Feb. 9, 1965.

E. D. Grinnell, Jr., St. Louis, Mo., Loeffler & Allen, Bristow, Franklin, Harmon & Satterfield, Oklahoma City, for plaintiffs in error.

Rucker, Tabor, Shepherd & Palmer B. W. Tabor, O. H. "Pat" O'Neal, Paul McBride, Tulsa, for defendant in error.

DAVISON, Justice.

This is an appeal by St. Louis-San Francisco Railway Company and Leo McKinney (defendants below) from an order of the trial court granting a new trial to plaintiff, Frankie Nancy Davis, Administratrix of the Estate of Loyd Frank Davis, deceased, after verdict for defendants in a wrongful death action.

Plaintiff's action was for damages for the death of her husband as a result of a collision between a truck being driven by him and a freight train of the defendant company, at about 3:00 o'clock in the afternoon of March 16, 1961, a short distance outside of the city limits of Henryetta, Oklahoma. The defendant, McKinney, was an employee of the company and was operating the train engine at the time of the accident.

Plaintiff's motion for new trial was based on two grounds: that the verdict was contrary to law, and that the court erred in allowing the defendants to introduce a series of pictures which were not a true representation of the scene of the accident, but were staged and misleading and prejudicial to plaintiff. In granting a new trial to plaintiff the trial judge stated that his sole

ground for doing so was that the defendants:

" * * * pictures are deceptive and distorted, in my opinion; distorts the premises as viewed out there. However, I will say this—as they are put together. If they had separated and introduced individually, they probably would have been admissable. * * * I thought otherwise it was a fairly good trial; * * *"

The pictures in question were defendants' exhibits 1 and 2, consisting of two sets of pictures fastened edge to edge in two panoramic views, and introduced as a true representation of the locality, including the crossing where the collision occurred and views of the railroad tracks.

Plaintiff's petition alleged inter alia that motorists on the road approaching the tracks were unable to see the defendants' trains because of trees, high weeds, telephone poles and frame buildings. Defendants' answer alleged to the contrary that an approaching train was clearly visible. The record reflects that the road on which the deceased was driving his truck extends east and west, and the defendants' railroad tracks run on an elevated roadbed from northeast to southwest and cross the road at about a 45 degree angle. The train was approaching from the northeast as the deceased drove his truck on the road from the east toward the tracks, where the collision took place. The speed of the truck was about 15 miles per hour and that of the train about 35 miles per hour. The pleadings and physical conditions present the issue of whether the train was visible across the intervening area.

Defendants' photographs were made by a professional photographer with a camera with a normal lens on March 17, 1961, being the day after the collision. Exhibit 1 consists of 4 photo exposures made at eye level with the camera fixed to a tripod at a point in the road 75 feet east of the tracks. The first photo was of the intersection and the others were made by turning the camera at intervals to the right to record consecutive views, with the last picture practically due north. Exhibit 2 consists of 5 photo exposures similarly made from a point 215 feet east of the tracks. In each instance the photos were placed edge to edge, so that the details or outlines of trees, houses, rails and objects coincided with the adjoining photo, and the edges held together with a flexible tape. The pictures show the intersection, tracks, railroad right of way, a small house that was shown to be 177 feet east of the tracks, and an auto salvage yard farther east with trees (bare of leaves) about the house and yard.

The photographer testified that exhibits 1 and 2 showed the view that a person would have when standing at the above points and looking the same way. A State Highway Trooper, who arrived shortly after the collision, testified the exhibits correctly portrayed the view that he saw on the day of the accident and what a motorist would have seen. An occupant of the house at the time of the accident likewise testified that exhibits 1 and 2 accurately represented what could be seen by a person in the area at that time. There was no testimony to the contrary. It is obvious from the remarks of the trial judge, made at the trial when overruling plaintiff's objection to the exhibits, that he was cognizant of the composition of the exhibits. Plaintiff introduced 9 photos of views in the area taken on June 9, 1961. Both parties used a large aerial photograph of the area.

█ The individual photographs in the exhibits were competent evidence and we know of no logical or legal reason why, under the circumstances above detailed, they could not be joined as they were to present two panoramic views of the locality to refute plaintiff's contention and later photographic evidence that the train was not visible to plaintiff's deceased as he approached the crossing. The new trial was granted exclusively on the ground that the composition of the exhibits gave a deceptive and distorted view of the premises. This was entirely a conclusion of the trial judge. Neither the record nor the argument dis-

close in what respect there was deception, distortion or inaccuracy between the actual area and the photographs thereof. Our own careful inspection of the exhibits fails to disclose any inherent deception or distortion in the pictures, and qualified witnesses stated, with no denial, they were accurate representations of the area they purported to show.

The matter resolves itself into the proposition of whether, under the circumstances, there was error in admitting the exhibits in evidence at the trial.

■ In St. Louis-San Francisco Railway Company v. Kilgore, Okl., 366 P.2d 936, 939, on authority of cited cases, it is stated:

"We have consistently held that where photographs are proved to be true and correct representation of whatever they purport to represent, they are admissible and competent as evidence, as an appropriate aid to the jury in elucidating the evidence; and this rule applies to persons, places and things."

In Hisaw v. Atchison, T. & S. F. Ry. Co., 197 Okl. 228, 169 P.2d 281, five photographs of the grade crossing taken from various distances were held to be properly admitted in evidence, and stating:

"Photographs, properly identified, are admissible in evidence as aids to the jury in arriving at an understanding of the evidence, or the situation on condition or location of objects or premises, material and relevant to the issues, where it is proved that the conditions remain unchanged since the time of the accident."

And in Kansas City Southern Ry. Co. v. Waters, 120 Okl. 1, 249 P. 742, we held that it was reversible error to exclude photographs offered as evidence by the defendant which were accurate reproductions of the grounds at the time of the accident, to show how underbrush and a peach orchard affected plaintiff's visibility of an approaching train, where these matters were material questions for consideration in the trial of the cause.

Plaintiff cites Provident Life & Accident Ins. Co. v. Everett, 177 Okl. 558, 61 P.2d 679, where the admission of a substantially true drawing of a depot platform was questioned, as authority that the trial judge's decision upon the question of admission in evidence of the drawing and like evidence, including photographs, would not be reviewed by the appellate court.

However, in the later case of Fuller v. Neundorf, Okl., 293 P.2d 317, after referring to the cited case and other authority, we applied the test of "abuse and discretion" in determining whether the trial judge had erred in excluding an imperfect drawing of an intersection from the consideration of the jury.

In the present case it was not a matter of whether a substantially true or an imperfect drawing was erroneously admitted in evidence. The exhibits were accurate representations of the area. It is our conclusion that under the circumstances of this case the defendants' exhibits 1 and 2 were competent evidence and properly admitted and that it would have been error to exclude them.

This brings us to the matter of discretion of the trial court to grant a new trial.

■ This court has held that although a trial court has broad discretion in the matter of granting new trials, such discretion is not unqualified, but is a sound legal discretion to be exercised in accordance with recognized principles of law. Cosmo Construction Company v. Loden, Okl., 352 P.2d 910; Jones v. Myers, Okl., 332 P.2d 32; Cooper v. Woodruff, Okl., 357 P.2d 969; and Bishop's Restaurant, Inc., of Tulsa v. Whomble, Okl., 355 P.2d 560, 564.

It is our conclusion that in granting a new trial the trial court did not exercise a sound legal discretion in accordance with recognized principles of law and there was no valid ground for granting a new trial.

■ Where it is determined that the trial court acted arbitrarily, clearly abused its discretion, or erred on some pure, unmixed

question of law in granting a new trial, the order granting a new trial will be reversed. Cosmo Construction Company v. Loden and Cooper v. Woodruff, supra.

The order sustaining plaintiff's motion for a new trial is reversed.

HALLEY, C. J., JACKSON, V. C. J., and WILLIAMS, BLACKBIRD, IRWIN and BERRY, JJ., concur.