GRIFFIN et al. v. ASBURY.

No. 31401. April 3, 1945.

Rehearing Denied Nov. 20, 1945.

Application for Leave to File Second Petition for Rehearing Denied Feb. 19, 1946.

*165 P. 2d 822.*

Rittenhouse, Webster, Hanson & Rittenhouse, of Oklahoma City, Blanton, Curtis & Blanton, of Pauls Valley, and Busby, Harrell & Trice, of Ada, for plaintiffs in error.

Gomer Smith, of Oklahoma City, and C. H. Bowie, of Pauls Valley, for defendant in error.

RILEY, J. This is an action commenced by defendant in error, herein referred to as plaintiff, against Frank Griffin and Ada Coca-Cola Bottling Company to recover damages for personal injuries. The basis of plaintiff's claim, as alleged in her petition, is that on May 4, 1940, plaintiff bought from defendant Frank Griffin, a retail merchant in Stratford, Garvin county, Okla., a bottle of Coca-Cola; that she immediately opened and drank from the bottle until she had consumed nearly all the contents, when she noticed that she had swallowed with the Coca-Cola some substance which cut and irritated her throat and had passed into her stomach, which substance proved to be a small piece of glass; that she spat out the Coca-Cola then in her mouth, in which was another small piece of glass about three-eighths inch in length. Examination of the remaining contents of the bottle revealed that there were five other small pieces of glass therein. Defendant Coca-Cola Bottling Company had bottled the Coca-Cola and sold it to the defendant Griffin. Plaintiff set out in detail her alleged injuries resulting from swallowing the piece of glass. She alleged that the injuries were permanent. She pleaded that defendants

knew that said beverage would be consumed by the public and warranted and represented to all persons who might purchase said beverage as being pure, harmless, wholesome, and safe to drink.

Plaintiff alleged that it was the duty of the defendants to the public to furnish and sell pure, harmless, wholesome, and safe Coca-Cola; that it was by reason of the carelessness and negligence of defendants that she was so injured and damaged, and that if said defendants, and each of them, had exercised due care, said injury would not have occurred. In other words, plaintiff claimed, as a basis of her cause of action, that her injury was the result of breach of warranty on the part of both defendants, and also alleged that her injury was the result of negligence on the part of both defendants.

Answer was by general denial. The issues were tried to a jury resulting in a verdict and judgment for plaintiff against both defendants in the sum of $10,156.13. The verdict specified that $156.13 was for doctor's and drug bills.

Defendants appeal.

The first assignment of error is that the court erred in refusing to require plaintiff to elect, before the trial, whether she would prosecute upon the theory of negligence or upon the theory of breach of implied warranty. Before the introduction of any evidence, defendants moved the court to require plaintiff to elect as between the two theories. The motion was overruled. After the close of all the evidence, counsel for plaintiff announced:

"Let the record show at the close of all the evidence, that the plaintiff, in compliance with the defendants' motion to require plaintiff to elect, does elect to eliminate the allegations of negligence and go to the jury solely upon the question of implied warranty."

The court submitted the issues to the jury as to both defendants upon the theory of breach of implied warranty.

Defendants contend that this is a case where plaintiff should have been put to an election, and that it was error to refuse to require the election before any evidence was presented.

Assuming, without here deciding, that this is a case where plaintiff should have been required to elect, it does not necessarily follow that it was reversible error to permit plaintiff to wait until all the evidence is in before making the election. In Barry-Beall Dry Goods Co. v. Francis et al., 104 Okla. 81, 230 P. 496, it was held not error to permit a party, after his evidence was all in, to withdraw an election made before trial and change his election, where it appeared that plaintiff had gained no advantage and the opposite party had suffered no detriment. In this case it does not appear that plaintiff gained any advantage by delay in making the election or that defendants had been prejudiced thereby. Plaintiff had produced no evidence tending to prove negligence on the part of defendant Griffin. As to the other defendant, it does not appear that the evidence would have been different had plaintiff elected to claim on negligence. The error, if any, did not prejudice defendants.

We pass, for the present, consideration of the second proposition.

The third proposition is that the court erred in giving instruction No. 3 to the effect that a manufacturer who sells and places bottled goods on the market for the public impliedly warrants that the bottled beverages are pure and wholesome, and is liable for injuries resulting from broken glass in a bottle of its product, whether it is guilty of negligence or not, if innocently and unknowingly taken by such person, and that a retail dealer who sells such a beverage for human consumption is bound by the same rule.

It is contended that as applied to defendant Ada Coca-Cola Bottling Company this instruction is erroneous in that there can be no liability of a manufacturer of food products, based upon breach of implied warranty. In this connection, defendants concede that there is sharp conflict in the authorities. The liability of a bottler of beverages is

generally recognized, but the courts are not agreed upon the principle upon which liability rests, i.e., whether it may be founded upon an implied warranty or upon negligence. 22 Am. Jur. 891-892; 26 C.J. 785.

It is said that according to the weight of authority the rule of liability is founded in tort and not in contract, and therefore there can be no implied warranty.

There appears to be a well developed, though not generally recognized, exception to the rule. Particularly is this true as applied to manufacturers who prepare and seal food or beverage in containers with the intention that the seals are not to be broken or the container opened until the ultimate purchaser is presently ready to consume the same.

In Coca-Cola Bottling Works v. Simpson, 158 Miss. 390, 72 A.L.R. 143, 130 So. 479, it is held:

"Manufacturer putting drink on market for human consumption breaches implied warranty, and is liable to person consuming drink for injury resulting, where drink is not fit for human consumption."

In Davis v. Van Camp Packing Co,. 189 Iowa, 775, 17 A.L.R. 649, 176 N.W. 382, it is held:

"One who puts up food to be sold through retailers for human consumption impliedly warrants that it is not deleterious, and is liable to a consumer injured by eating food not fit for use."

Therein it is also held:

"One seeking damages from a food manufacturer for injuries caused by eating unfit food is not compelled to elect between implied warranty and negligence as a ground for recovery."

In the latter cause, the court cited numerous authorities, some holding to the one rule and some to the other. In the body of the opinion it is said:

"From the decisions, and particularly the later decisions, we think there is an implied warranty as contended by plaintiff, and that the question as to privity is not controlling. The case should have gone to the jury on that question. We are of the opinion, too, that on the whole case there was sufficient evidence to take the case to the jury on the question of negligence, and that it was for the jury to say whether plaintiff's prima facie case had been negatived or overcome by the testimony introduced on behalf of the defendant. The court erred in requiring plaintiff to elect as between implied warranty and negligence."

In Boyd v. Coca-Cola Bottling Works. 132 Tenn. 23, 177 S.W. 80, it is said:

"When the manufacturer of this beverage undertook to place it on the market in sealed bottles, intending it to be purchased and taken into the human stomach, under such circumstances that neither the dealer nor the consumer had opportunity for knowledge of its contents, he likewise assumed the duty of exercising care to see there was nothing unwholesome or injurious contained in said bottles. For a negligent breach of this duty, the manufacturer became liable to the person damaged thereby."

It is then pointed out that some of the cases place the liability on grounds of negligence, that others say there is an implied warranty. Finally, the court says:

"Upon whatever ground the liability of such manufacturer to the ultimate consumer is placed, the result is eminently satisfactory, conducive to the public welfare, and one which we approve."

In Parks v. Yost Pie Co., 93 Kan. 334, 144 P. 202, a case involving food sealed by the manufacturer, it is said:

"A manufacturer or dealer who puts human food upon the market for sale or for immediate consumption does so upon an implied representation that it is wholesome for human consumption."

Implied warranty as well as negligence was held a proper ground upon which a bottler might be held for injury to the ultimate consumer in Nock v. Coca-Cola Bottling Co., 102 Penn. S. Ct. 515, 156 Atl. 537. Many cases are there cited in support of the rule. There are cases holding to the contrary. Including cases involving unsealed foods

or beverages, the authorities holding against liability on the implied warranty are perhaps more numerous. But where food or beverage is prepared by the manufacturer and placed in sealed containers and is such that it will lose its fitness for human consumption if opened any considerable length of time before being consumed, the manufacturer knows that it is intended to be kept sealed until purchased for immediate consumption. In such cases, the weight of authority and the sounder reasoning is that the manufacturer impliedly warrants such articles to be fit for human consumption and free from poisonous or other deleterious or dangerous substances, and that liability to the ultimate consumer who purchases from a retailer may be based upon implied warranty. See, also, annotations 140 A.L.R. 191.

There was no error in the instruction.

We now consider the second proposition. It is that the court erred in giving instruction No. 2, as follows:

"You are instructed that the State of Oklahoma has by statute imposed certain duties upon those who manufacture and sell articles of food and drink for public consumption, and that the statutory law of Oklahoma provides in part:

" 'That a food or drink sold to the public shall be deemed adulterous within the meaning of the statute if it contains any added deleterious ingredients in the food or drink.'

"Any addition to a food or drink is deleterious if it is harmful, hurtful or damaging to the person eating or drinking the product.

"It was the duty of the defendants, and each of them, to see that the product sold to the public, and particularly the product sold to the plaintiff in this action was pure, wholesome and free from any deleterious addition."

There is some merit in this contention. In Mangelsdorf Seed Co. v. Busby et al., 118 Okla. 255, 247 P. 410, where a similar statute, known as the Pure Seed Law, ch. 138, S.L. 1919, was involved, it is held:

"Chapter 138, S.L. 1919, known as the Pure Seed Law, is a regulatory and penal statute designed primarily to protect the citizens of this state from the propagation and spread of noxious weeds and plants through their intermixture with agricultural and garden seed, and none of its provisions were intended to, or do, create any new rule of civil liability for breach of express or implied warranty in the sale of personalty."

And:

"In an action ex contractu for breach of implied warranty in the sale of seeds, that portion of section 8 of the act making illegal the sale of seeds bearing a false label has no application, because scienter must be alleged and proved under that section."

See, also, Mangelsdorf Seed Co. v. Williams, 118 Okla. 258, 247 P. 413.

A statute prohibiting the sale of adulterated milk or cream and providing that such food shall be deemed adulterated if it contains any added poisonous or other added deleterious ingredient, is not aimed at foreign matter such as stones, tacks, or broken glass which do not become a part of the substance of the milk or cream. Bourcheix v. Willow Brook Dairy, Inc., 268 N.Y. 1, 196 N.E. 617, 98 A.L.R. 1492. In this case, plaintiff expressly withdrew allegations of negligence and elected to go to the jury on the sole issue of breach of implied warranty. Violation of the Pure Food Law would not constitute any part of a breach of implied warranty.

The fourth proposition presents substantially the same question as the third. Further discussion thereof is unnecessary.

The fifth proposition is that the court erred in instruction No. 5, going to the measure of damages, in that the court instructed that in fixing the amount of plaintiff's recovery, if any, the jury might take into consideration whether plaintiff's injury is temporary or permanent, or one that will cause her to suffer in the future.

It is well settled that in order to

warrant a recovery for permanent injury, the permanency of the injury must be shown with reasonable certainty. It is not necessary that the evidence show conclusively that the injury is permanent. While absolute certainty is not required, a mere conjecture or even probability does not warrant giving damages for future disability which may never exist. 15 Am. Jur. 486.

In a personal injury action, where the injuries are of such a character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science and must necessarily be determined by the testimony of skilled professional persons. Shawnee-Tecumseh Traction Co. v. Griggs, 50 Okla. 566, 151 P. 230. Such is the nature of plaintiff's injuries as to whether the same are permanent. The injuries in this respect are purely subjective. There is nothing from which it can be determined objectively whether the injury is permanent. Therefore, the question of whether her injury is permanent was to be determined from the testimony of skilled medical witnesses.

The same rule applies as to future pain and suffering. Hines, Director General, v. Dean, 96 Okla. 107, 220 P. 860; Pine v. Rogers, 182 Okla. 276, 77 P. 2d 542; City of Pawhuska v. Crutchfield, 155 Okla. 222, 8 P. 2d 685.

In this case, no skilled medical person testified that in his opinion plaintiff would suffer future pain. There was no competent evidence on that question. Two skilled witnesses did testify concerning the question of permanency of the injury. Neither would express the opinion that the injury was permanent. One witness, Dr. Staff, when asked his opinion whether plaintiff would ever get well, answered:

"That depends upon the progress of the case."

When further pressed for an opinion, the doctor answered:

"I think, in a case like this, the progress, the case should be guarded prognosis, it would be guarded prognosis."

When asked by counsel for plaintiff and by the court to explain the meaning of the term "guarded prognosis," he answered:

"Guarded prognosis is a case where we follow along and don't know what is going to happen and just have to expect anything."

Doctor Walker, the only other skilled witness, had never treated nor examined plaintiff. He was asked for an opinion as to the permanency of plaintiff's injury, based upon a hypothetical question. His answer was:

"I would say that the prognosis in this case, or the probable outcome, is not good. It would likely be permanent."

In Magnolia Pipe Line Co. v. Brown, 195 Okla. 345, 157 P. 2d 184, 185, the sufficiency of the evidence to support an instruction on the question of permanent injury was questioned and the instruction was sustained, and in connection therewith it is said:

"We say this because the jury had before it the evidence of the injuries suffered by the plaintiff, the pain he suffered from the severe burns, and the partial loss of hearing in the injured ear, which the doctor thought from the nature of the injury probably would be permanent."

Under the rule there stated, and possibly under St. Louis & San Francisco R. Co. v. Simmons, 119 Okla. 1, 254 P. 894, the testimony of Doctor Walker was apparently sufficient to sustain instruction No. 5 insofar as it went to the question of permanent injury. But as to the question of future pain and suffering, there is no competent evidence whatever to sustain the instruction.

It is error to submit to the jury the question of future pain and suffering where the nature of the injury is not such that a layman can with reasonable certainty know whether there would be future pain and suffering, where the testimony of an expert witness on that point is lacking. Hines, Director Gen., v. Dean, supra.

There was no mention of future pain

and suffering in instruction No. 7 requested by defendant and the suggestion of plaintiff that the defendant, by requesting said instruction, invited an instruction on the question of permanent injury need not be considered on the question of future pain and suffering.

Other alleged errors are claimed but they are such as may not arise in another trial.

Reversed and remanded for new trial.

GIBSON, C.J., and OSBORN, BAYLESS, WELCH, and DAVISON, JJ., concur. HURST, V.C.J., and CORN, J., dissent.