## ADA COCA-COLA BOTTLING CO. et al. v. ASBURY.

No. 34152.   Jan. 22, 1952.

Rehearing Denied April 1, 1952.

*242 P. 2d 417.*

of an instrument furnished by said defendant and thereupon drank from the bottle; that unknown to her the bottle contained several pieces of glass which cut and irritated her throat and passed into her stomach; that as a result of swallowing the glass she suffered a continuous and disabling illness and permanent injuries to her body; that defendant Ada Coca-Cola Bottling Company had bottled the Coca-Cola and sold it to the defendant Griffin; that defendants in implied warranty represented the beverage she had purchased to be free from harmful substance and fit and safe for human consumption; that her injuries were the result of breach of said warranty on the part of both defendants; that she was damaged to the extent of $26,285.95.

Answer was by general denial. First trial was had, resulting in a verdict and judgment for the plaintiff and against both defendants. That judgment was reversed for the reasons noted in Griffin v. Asbury, 196 Okla. 484, 165 P. 2d 822. A new trial has resulted in verdict and judgment for the plaintiff in the amount of $13,142.97, and the defendants bring this appeal.

In presenting this appeal no question is raised by the retailer separately. Nothing is presented on the question whether his position would be or might be different from the position of the manufacturer in this case, and we therefore do not consider that question.

Rittenhouse, Hanson, Evans & Turner, Oklahoma City, for plaintiffs in error.

Gomer Smith, Oklahoma City, and C. H. Bowie, Pauls Valley, for defendant in error.

WELCH, J. Eva Asbury commenced this action against Frank Griffin and Ada Coca-Cola Bottling Company, a corporation, for damages for personal injuries.

By petition the plaintiff alleged that she bought a bottle of Coca-Cola from the defendant Frank Griffin, a retail merchant engaged in the business of selling groceries, bottled beverages, etc.; that upon such purchase she immediately uncapped the bottle by use

Defendants contend "that the verdict and judgment are not sustained by sufficient evidence and are contrary to law."

There is no question raised as to the sufficiency of the evidence as showing that plaintiff purchased the bottle of Coca-Cola under the circumstances alleged in her petition, and that she drank therefrom and swallowed glass and thereafter became afflicted with a continuous disabling illness as alleged in her petition.

The defendants assert there was no competent testimony of witnesses

skilled in medical science to show a causal connection between plaintiff's alleged disabling illness and injury and the act of swallowing the glass.

Evidence was introduced tending to show that plaintiff was of the health, strength and vigor of a normal person of her years at the time she swallowed the glass.

A physician called by the plaintiff gave testimony to the effect that he attended plaintiff over a period of a year's time, commencing with a professional call on her four days after the incident of the glass swallowing; that throughout the time of his observation and treatment of the plaintiff she was nervous and had a soreness of the abdomen, and had vomiting spells and was physically unable to perform ordinary housework; that he prescribed sedatives and an estrogenic substance in attempts to relieve her nervousness; that from his examination and observation of the plaintiff he formed the opinion that plaintiff's condition was the result of a continuing irritation of the gastro-intestinal tract by some foreign object lodged therein. That from the history given by the plaintiff he formed an opinion that her condition was the result of the swallowing of the glass from the Coca-Cola bottle and its lodgment in the gastro-intestinal tract; that at of the date of his last attendance upon the plaintiff, he was of the opinion that her ultimate recovery was uncertain.

Several years elapsed between the date of the last attendance upon plaintiff by the physician referred to above, and the date of trial of this case. The plaintiff testified that in this interim she had at various times taken compounds furnished by an unlicensed Indian herb doctor; that she seemed to gain strength for a few days at such times, but she was unable at any time during this period to do more than take short walks.

A physician witness testified that he had examined the plaintiff at a time approximately one and one-half years before this trial of the case and was given a history by the plaintiff as to her swallowing of glass as of the date she has alleged, and that he had again examined the plaintiff a few days before this latest trial proceeding. The witness testified concerning his findings that the plaintiff is for all practical purposes 100 per cent disabled, and that such condition is permanent. On the hypothesis that the plaintiff was in good health and strength when she swallowed particles of glass, and that she became immediately ill, symptomized by vomiting and a soreness of abdomen and loss of weight and strength, and that such illness and accompanying symptoms had persisted, periodic and continuous, for a period of years to the time of trial, the witness expressed an opinion that her condition, as he had found on physical examination, was the result of swallowing the glass.

The defendants contend the hypothetical question which elicited the response of the witness as to cause of plaintiff's disability was incompetent and defective in that the question did not set forth the medication given the plaintiff by her physician in the first year of her illness, or mention the concoctions taken by the plaintiff and furnished her by the Indian herb doctor in the five year period before trial. Defendants assert such treatment and the nature of the medicine administered were essential and material to the formation of an accurate opinion on the part of the expert witness.

The expert witness in cross-examination in effect stated that the cause of plaintiff's condition is mechanical and that medical treatment received by the plaintiff could have little bearing on the cause of the condition.

The defendants direct attention to the case of Gulf Oil Corp. v. Simmons, 197 Okla. 677, 174 P. 2d 359, and the following expression from the syllabus thereof.

"Where certain facts are undisputed and are material to the formation of

an accurate opinion on the part of the witness, a hypothetical question should include such facts and their omission will justify the trial court in rejecting the answer."

In the Simmons case reference is also made to Shuffield v. Taylor, 125 Tex. 601, 83 S. W. 2d 955, and an expression of that court, as follows:

"A hypothetical question should be; so framed as to recite all the facts in evidence relevant to the formation of an opinion, and then, assuming the facts to be true, the witness should be asked, if able to form an opinion therefrom to state his opinion. A question is not necessarily improper because it includes only a part of the facts in evidence provided it embraces enough of them to enable the witness to formulate an intelligent opinion."

Herein it is apparent that the witness, shown skilled in medical science, in conduct of a physical examination of the plaintiff did not consider information of prior medication or medical treatment received by the plaintiff was of importance to a determination of her physical condition, or that information as to medication or medical treatment received by the plaintiff was relevant and necessary to the formation of an opinion as to the cause of her condition under an hypothesis that she had swallowed glass and thereafter developed the certain symptoms described.

Herein, the only evidence concerning medication or medical treatment received by the plaintiff was such as was of a sedative effect. We find no unfair selection of the facts in proof or omission of material facts in evidence or otherwise as to require the trial court's rejection of the hypothetical question challenged by the defendants. With reception of the question, and on acceptance of the answer given thereto, and on acceptance of all the testimony of the two physicians and the lay testimony concerning the plaintiff's physical appearance and activities prior to the incident of drinking from the bottle, there appears to be sufficient competent evidence in permissive inference reasonably tending to support a finding of the jury of permanent injury to the plaintiff and causal connection between such injury and the swallowing of glass from the bottle furnished by the defendants.

Defendants contend their demurrers to the plaintiff's evidence should have been sustained for the failure of proof that the bottle involved contained glass when it left the bottling plant.

In this connection attention is directed to the circumstances in proof that plaintiff received the bottle of Coca-Cola from an unlocked cooling box accessible not only to the plaintiff but to all persons that came into the defendant Griffin's store, and to a showing that the caps as are used on the standard Coca-Cola bottles are such as may be removed and replaced by the use of care as to leave the bottle in that same appearance as when delivered by the bottler of the Coca-Cola.

Defendants suggest that there was a deficiency in proof as reflecting any liability of the defendant bottling company; that as against the bottler no prima facie case was made by the plaintiff with a mere showing of the presence of glass in the bottle at the time plaintiff uncapped and drank of the contents; that plaintiff was not entitled to benefit of the res ipsa rule of evidence without showing a nonopportunity of third persons to open and recap the bottle after it left the possession of the bottler.

Defendants direct attention to the holdings of the Tennessee courts in Hoback v. Coca-Cola Bottling Works of Nashville, 20 Tenn. App. 280, 98 S. W. 2d 113, and Coca-Cola Bottling Works v. Sullivan, 178 Tenn. 405, 158 S. W. 2d 721. In the Hoback case it was held:

"To justify recovery from bottling company for injuries resulting from foreign substance in bottled beverage, there must be evidence from which it could reasonably be found that foreign substance was in bottle when it left

company's possession and that there had been no reasonable opportunity for tampering with bottle prior to its delivery to plaintiff."

In the Sullivan case the court makes a distinction in application of the res ipsa rule in cases involving the sale through a middleman of soft drinks in bottles where caps are used which may be removed and replaced, and in cases involving the sale of food products in sealed cans as may not be readily opened and resealed. Where injurious contents are received and taken by a consumer under circumstances of the latter instance, it was said that in the very nature of the container there is a tie-in of the injury-working thing to the control of the manufacturer, as essential of the res ipsa doctrine, and as to make fairly applicable the rule of presumptive or prima facie negligence on the part of the manufacturer. While in the circumstance of a bottle where the cap might be removed and replaced it was held that a higher degree of proof must be made, that it must be shown that there has been no reasonable opportunity for tampering with the bottle or its contents, in the interim between the physical control of the bottler and that of the consumer before the bottler or manufacturer may be put to proof of exercise of due care to defeat a recovery. See 140 A. L. R. 229.

Beyond question, the res ispa loquitur doctrine is not available to a plaintiff without a showing that the "thing" causing the injury was under the control of the defendant. Pine v. Rizzo, 186 Okla. 35, 96 P. 2d 17; Lawton Coca-Cola Bottling Co. v. Shaughnessy, 202 Okla. 610, 216 P. 2d 579. In cases dealing with liability for foreign substances in bottled beverages there is a diversity of opinion among the various jurisdictions concerning the quantum of proof required of a plaintiff and as will show that the "thing" causing the injury was under the control of the bottler.

In Coca-Cola Bottling Co. v. Spurlin, 199 Ark. 126, 132 S. W. 2d 828, there was evidence that the plaintiff purchased and drank part of a bottle of beverage at a stand, felt something rough go down his throat, and upon examining the bottle found that inside the bottle neck the glass had cracked and crumbled from some cause, starting at the top of the bottle and going down on the inside, that all of the pieces of glass broken off were not found, that other pieces were found in the cap container where the cap from the bottle in question fell when it was removed by the retailer, and that the bottle was not broken on the outside. This evidence at its maximum probative value was held to warrant submission of the question of the bottler's negligence to the jury. It was said by the court:

"Plaintiff's prima facie case is made when he shows the presence of glass in the bottle at the time he drank it, and the burden is then on the defendant to show that it was not there when the bottle left its possession." Anno. 140 A. L. R. 227.

In Dr. Pepper Co. v. Brittain, 234 Ala. 548, 176 So. 286, a judgment in favor of one who purchased from a retailer a bottle of soft drink, uncapped and drank part of the same and discovered in the remainder a foreign and unwholesome substance and immediately became sick, was affirmed. This, upon the principle that when an article such as bottled and capped soft drink "is prepared for and intended to be consumed by some member of the public, and an attempt is made to do so by one so intended, and when the apparently original sealed package is first broken, it contains a foreign unwholesome substance, there is a presumption that such matter found its way in it on account of the negligence of (the manufacturer or bottler.)" It was said by the court:

"Appellant contends that the cap was removable, and could be replaced without it being subject to detection, and from it argues that the foreign substance, if in the bottle at all, was so placed after it was bottled and sold by

defendant. But the bottle in defendant's possession after it was filled and sealed could as well have been opened and recapped as after it left defendant's possession. When the sealed bottle has the seal on it in apparently the condition in which it was sold by defendant, and the foreign substance was then in it, the burden is upon defendant to explain its presence in a manner consistent with due care by it." Anno. 140 A.L.R. 219.

Herein, the plaintiff's action is based on a breach of implied warranty in the sale of a bottled beverage, containing particles of glass. In Griffin v. Asbury, supra, we held:

"Where a bottled beverage, intended for human consumption, is sealed by the manufacturer and placed upon the market through retail dealers, the manufacturer impliedly warrants such beverage to be fit for human consumption. Liability of the manufacturer to the ultimate consumer who purchases from the retailer may be based upon implied warranty."

That was the former appeal of this same case. The above-quoted holding is therefore "the law of the case" and binding on us in this appeal. The rule to this latter effect is fully set out in Harp v. First National Bank of Anadarko, 169 Okla. 548, 37 P. 2d 930, and cases therein cited, and in Amerada Petroleum Corp. v. Elliff, 171 Okla. 38, 41 P. 2d 850, and in Pyle v. Pennington Grocery Co., 187 Okla. 133, 101 P. 2d 847.

We promulgated the above rule on the basis that when a manufacturer or bottler prepares and seals food or beverage in containers with the intention that the seals are not to be broken or the container opened until the ultimate purchaser is presently ready to consume the same, such manufacturer or bottler impliedly warrants such food or beverage in such original sealed container to be free from any dangerous substances.

When such manufacturer or bottler has placed its product in the legitimate channels of trade and it has reached an ultimate purchaser in its original sealed package, obviously the sealed container imports a continuity of control over the contents of the container by the manufacturer or bottler. In such circumstance the sealed container speaks for itself as to the prima facie responsibility of the manufacturer or bottler for its contents.

Herein, the plaintiff has shown the purchase of a capped bottle of Coca-Cola from the defendant retail dealer who in turn had purchased his supply of bottled Coca-Cola from the defendant bottling company; that the beverage when purchased and received by the plaintiff was in a capped bottle of the standard design and color as is universally used in bottling Coca-Cola; in other words, that the beverage was in an apparently original sealed package such as was prepared and delivered by the defendant company to the defendant retailer.

We are of opinion that these circumstances in proof in a permissive inference show that the bottled beverage as was purchased by the plaintiff was delivered by the defendant company to the defendant retailer in the same condition as to contents as when received by the plaintiff from the retailer, and that with evidence that the bottle then contained Coca-Cola and glass, a breach of implied warranty of the fitness of its contents for human consumption was shown.

Defendants complain of instruction given to the jury in that such instructions tender an issue as to the bottle containing glass, sealed in it by the defendant company, and that the instructions tender an issue as to the permanent injury of the plaintiff. The basis of complaint is that there was no sufficient evidence presenting such issues. We have hereinabove noted the existence of circumstances in proof tending to affirm these issues and here note that, in the instructions given, the jury was advised that the burden of proof was upon the plaintiff to establish the affirmative of these issues by

a preponderance of the evidence. We find no merit in the complaints concerning the instructions.

Defendants assert the amount of damage assessed is grossly excessive, without evidentiary support, and given under the influence of passion or prejudice.

In the consideration of the jury's verdict all the evidence favorable to the plaintiff's contention must be accepted and given its maximum probative value. So taken, the evidence shows that the plaintiff has endured physical pain and discomfort over a period of years and has become permanently disabled, all at the fault of the defendant.

There is no monetary standard of measurement of damages for pain and suffering endured over a period of years. The amount to be awarded therefor is largely a question for the jury, to be determined by it in view of the facts and circumstances of the case, and according to their sense of justness as reasonable men. Herein the record does not reflect any acts or conduct in the trial proceedings as would be calculated to arouse the passion or prejudice of the jury. We find no cause to interfere with the jury's judgment as to the amount of damages assessed.

The judgment is affirmed.

HALLEY, V.C.J., and CORN, GIBSON, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.