Norma Sue SANTINE, Appellee,

v.

COCA COLA BOTTLING COMPANY, Muskogee, Oklahoma, Appellant.

No. 50429.

Court of Appeals of Oklahoma, Division No. 1.

Aug. 15, 1978.

Rehearing Denied Nov. 21, 1978.

Certiorari Denied Feb. 26, 1979.

Released for Publication by Order of Court of Appeals March 1, 1979.

Wilcoxen, Cate & Scherer, Clifford K. Cate, Jr., Muskogee, for appellee.

Bonds, Matthews & Bonds, A. Camp Bonds, Muskogee, for appellant.

BOX, Presiding Judge:

On appeal by Coca Cola Bottling Company, defendant-appellant, from a jury verdict in favor of Norma Sue Santine, plaintiff-appellee, arising out of her personal injuries from drinking a foreign substance out of a coca-cola bottle. The parties will be referred to as they appeared in the trial court.

Plaintiff filed this action alleging she drank a portion of a coca-cola, negligently bottled by defendant, which contained a worm or some type of foreign substance. After drinking the coke, plaintiff became ill and nauseated, and vomited. Plaintiff sought $125,000.00 in damages for pain and suffering, permanent disability, loss of earning capacity, and medical expenses. Defendant answered denying it bottled the drink, that the coke contained any foreign substance, nor that plaintiff received any personal injuries by virtue of drinking the contents of the bottle. Defendant further asserted the coke had been delivered to Safeway and defendant had no control over the bottle at the time of the purchase by plaintiff.

Upon trial of this controversy, Finus Ray Dodd was the first witness called to testify for plaintiff. Mr. Dodd was the assistant manager for Safeway in Tahlequah and all the coke in the store was purchased from the Muskogee Coca Cola Bottling Company owned by Bill Love.

Plaintiff's husband, Bob L. Santine, was called upon next to testify. Mr. Santine testified he bought an eight pack of cokes at Safeway and took them straight home. The cokes did not look as though they had been tampered with. On December 26, 1972, plaintiff fixed herself and her husband a coke. Thirty minutes after plaintiff drank the coke, plaintiff became ill, having pains and contractions, and vomited. The pain was severe all evening. Plaintiff was

not ill before she consumed the coke. According to Mr. Santine, the bottle that plaintiff had drank out of had sediment in the bottom, foreign matter which looked like tissue or organic matter such as skin or flesh of an insect or animal. The rest of the bottles contained more of the substance except the specimen were intact whereas the specimen was broken up in the bottle plaintiff drank out of. Two of the bottles had a full-sized specimen which Mr. Santine described as a worm approximately one to two inches in length and as big around as a thumb. Mr. Santine took the bottles to the University of Tulsa, but the insects could not clearly be identified there. The cokes were then taken by Mr. Santine to an independent testing laboratory, Moutrey and Associates, and given to Marcellotte Roeder. Mr. Santine testified that a week after the 26th, plaintiff was still weak and experiencing nausea and abdominal pains.

Marcellotte Roeder, the laboratory director of Moutry and Associates, received the coke bottles on January 9, 1973. Three of the bottles contained a junky residue in the bottom. The fourth bottle, which appeared to be perfectly capped [She made a notation that the cap had not been removed since it was originally sealed.], contained what she determined by visual examination to be a worm. She uncapped the bottle and sent part of the contents to California to a laboratory equipped with a gaschromatigraph. Ms. Roeder thought insecticide might be present since they were dealing with a dead larva state of an insect. She was trying to locate and identify a toxic, i. e. poisonous, agent.

Dr. William H. Buchan testified he saw plaintiff on January 4, 1973. Plaintiff told him she had swallowed foreign matter out of a bottle which made her immediately sick and she vomited and that she had had no previous attacks. Dr. Buchan thought plaintiff had gastritis, an ulcer or a digestive disturbance. He stated he saw plaintiff four times and plaintiff's symptoms of nausea and vomiting persisted. Plaintiff was prescribed medicine for an ulcer and charged $35.00. An ulcer can be caused by a toxin or poison. Given plaintiff's medical history, Dr. Buchan gave his opinion to a reasonable medical certainty that some foreign object in her stomach caused the nausea. A toxin could have caused plaintiff's condition. And Dr. Buchan further testified irritation of the stomach lining caused plaintiff's illness. If plaintiff still had the same symptoms today, he opined that it would be due to irritation in the lining of the stomach.

Plaintiff testified her husband brought the cokes home December 24, 1972, Christmas Eve. She drank a sixteen ounce glass on the 26th. When she opened the bottle, the cap was secure. Twenty or thirty minutes after she drank the coke, she had violent cramping and nausea, including vomiting. She was perspiring and terribly sick. Her vision blurred. She was up throughout the night. The next few days, plaintiff was continuously sick, cramping and throwing up. She had none of these symptoms prior to December 26th. Later, on the evening of the 26th, plaintiff picked up a full capped coke to fix a drink for her husband and saw something floating in it just prior to her uncapping it. She did not remove the cap. Two or three inches remained in the bottle of coke she had drank out of, the third one out of the carton, and she poured a little into the sink. Plaintiff saw particles in the sink, little pieces of worm. The substance was washed down the sink. It appeared to be the same substance as in the other bottles. Plaintiff testified she still experiences nausea, has cramping all the time, and her poor vision comes and goes. Plaintiff has seen several doctors since her visits with Dr. Buchan. She also had a cyst on her ovary in 1973 and a growth removed from her sinus cavity in 1975. Plaintiff's life expectancy is 40.34 years.

Prior to December 26, 1972, plaintiff owned two cosmetic studios and beauty shops, one in Tahlequah and the other in Wagoner. After 1972, plaintiff was not physically able to operate both and sold the Wagoner store which was a growing business and doing real good according to plaintiff. The Wagoner store was sold in August of 1973 for $9,000. Although plaintiff

made $3,000 profit on the sale, she testified the fair market value was twice the selling price. Exhibits were introduced showing plaintiff's decline in income since 1972 plus cancelled checks for prescriptions.

Defendant's first witness was Dr. C. L. Oglesbee who saw plaintiff on October 12, 1976. Dr. Oglesbee did not examine nor run tests on plaintiff because the incident had happened so long ago (1972), it would "be a very cold trail by now" and he did not make any decisions. Dr. Oglesbee also stated a diagnosis by a physician who had attended plaintiff soon after the illness would probably be more accurate. K. C. (Bill) Love, Jr., defendant's president, testified to the cleaning process of coca-cola bottles. In rebuttal, plaintiff presented David Robinson who worked for Mr. Love in 1972. Mr. Robinson stated he had seen impurities in unopened coke bottles manufactured by defendant, such as cigar and cigarette butts and a toothbrush. Upon submission of the cause to the jury, a verdict of $50,000.00 was returned. Defendant appeals.

I

■ Defendant contends that the trial court improperly instructed on the issue of control and erred in refusing to give instructions 1b and 1c, offered by defendant. Instructions 1b and 1c read, as follows:

(1b) If you do so find that the defendant bottled this particular bottle of coca cola, the *defendant will not be liable unless the plaintiff proved,* by preponderance of the evidence, *that defendant also had absolute and complete control of said bottle* of coke *at all times, from the time of bottling until it was purchased by the plaintiff. If any other party, including Safeway,* or its employees, *had partial control or access to said bottle, then this could not be complete control* by the defendant, Coca Cola Company, and said defendant would not be liable to this plaintiff herein.

(1c) You are further instructed that before defendant can be liable to this plaintiff, the *plaintiff has the burden of proving that no substantial change occurred in the product after leaving defendant's possession.* Failure of plaintiff to meet the burden of proof in these matters shall constitute a bar to her recovery and your judgment shall be for the defendant. (Emphasis added.)

The instructions offered by defendant do not accurately define the law in Oklahoma.

Under *Kirkland v. General Motors Corporation,* Okl., 521 P.2d 1353, plaintiff must prove that the defect existed in the product at the time it left the possession and control of the manufacturer. However, *Kirkland* recognizes that plaintiff may be forced to rely on circumstances and the proper inferences drawn therefrom. In pre-*Kirkland* cases, which dealt with foreign matter in sealed containers, the Supreme Court spoke to the issue of what the plaintiff needed to show to establish control of the defendant over the container and its contents. In *Ada Coca-Cola Bottling Co. v. Asbury,* 206 Okl. 269, 242 P.2d 417, 422, the Supreme Court stated that a sealed container imports a continuity of control over the contents of the container by the bottler. "The sealed container speaks for itself as to the prima facie responsibility of the manufacturer or bottler for its contents. And in *Oklahoma Coca-Cola Bottling Co. v. Dillard,* 208 Okl. 126, 253 P.2d 847, at page 850, the Supreme Court stated:

There is no direct evidence to indicate that the roach was *not* in the bottle when it left the control of the defendant bottling company. It is possible, but highly improbable, that the bottle had been opened and the roach permitted to enter it after it was delivered to the retailer. The rule of implied warranty announced in *Ada Coca-Cola Bottling Co. v. Asbury,* 206 Okl. 269, 242 P.2d 417, is applicable here; and the doctrine of res ipsa loquitur, as announced in *Oklahoma Coca-Cola Bottling Co. v. Newton,* 205 Okl. 360, 237 P.2d 627, is also applicable. The presence of a dead insect in a sealed bottle of beverage which is offered for human consumption speaks for itself and makes a prima facie case of negligence on the part of the bottler, *in the absence of any proof*

*that the bottle probably was not in the same condition when it reached the ultimate consumer as when it left the bottler.* (Emphasis added.)

See also *Southwest Ice & Dairy Products Co. v. Faulkenberry,* 203 Okl. 279, 220 P.2d 257. Although these cases were decided prior to *Kirkland* and under the implied warranty theory, *Kirkland* did not disturb the implied warranty theory under the Uniform Commercial Code. See *Kirkland,* supra at 1365 and Syllabus 7 by the Court. Under 12A O.S.1971, § 2–314, the implied warranty of merchantability specifically applies to food or drink. See *Williams v. Braum Ice Cream Stores, Inc.,* 534 P.2d 700 (Okl.App.1974); *O'Dell v. DeJean's Packing Co., Inc.,* 585 P.2d 399 (Okl.App.1978). Therefore, we hold that the *Asbury* and *Dillard* cases, supra, do apply to the issue of what plaintiffs must show to establish defendant's control and that the defect, i. e. the worm, existed in the bottle when it left the possession of defendant.

█ Under the authorities cited, defendant would have us place too great a burden of proof upon plaintiff. See the italicized portions of instructions 1b and 1c offered by defendant. There was no error on the part of the trial court in refusing to give the requested instructions. All evidence introduced by plaintiff tended to prove the bottles containing the foreign matter, including the one which plaintiff drank from which allegedly made her ill, were unopened and sealed, in their original condition. It then became defendant's burden to offer evidence showing the bottles had been tampered with since they left the manufacturing plant. No such evidence was introduced. The trial court correctly embodied the Oklahoma law on control in Instruction Number 5, which provides, in pertinent part:

You are instructed that the presence of insect larva or foreign substance in a sealed bottle of Coca Cola raises a presumption that the defect existed at the time the bottle left the bottler's control, and if you find that the bottle was in fact bottled by the Defendant and that foreign substance was discovered inside the

bottle by the Plaintiff and after having opened it then the burden of proof shifts to the Defendant to prove by a preponderance of the evidence that the condition of the contents changed after it left the bottler but before it was opened by the Plaintiff.

\*　　\*　　\*　　\*　　\*　　\*

In the event you do *not* find by a preponderance of the evidence that:
(1) The Defendant bottled the product complained of or,
(2) *That the foreign substance was placed in the bottle before it left the Defendant's control* or,
(3) That Plaintiff's injuries were proximately caused by drinking the defective substance or,
(4) That the contents of the bottle are unreasonably dangerous, then you shall find the issues in favor of the Defendant and against the Plaintiff. (Emphasis added.)

We have considered all of the trial court's instructions in light of the evidence. The trial court's instructions when construed in their entirety, have fairly submitted the issues to the jury. Therefore, no reversible error has been demonstrated. *Gasko v. Gray,* Okl., 507 P.2d 1231; *Wooten v. Hall,* Okl., 442 P.2d 334; *Squyres v. Klick,* Okl., 264 P.2d 325.

## II

█ Defendant next contends that it was error for the coke bottles to be exhibited in front of the jury without being introduced into evidence. However, the four coke bottles, the carton, the laboratory bottle, and the cap removed by Ms. Roeder, were all properly introduced into evidence [exhibits 1 and 2]. Inasmuch as the exhibits were introduced into evidence, there was no error in the exhibits being in the jury's view prior to their admission. They were shown to various witnesses in order to lay the foundation to establish their admissibility. The authorities cited by defendant support this holding. The Supreme Court in *Simon v. Hendricks,* 330 P.2d 186, 186–87, held:

1. The evidence of an expert is proper, if not essential, in explanation or interpretation of X-ray photographs when properly identified and offered in evidence; but it is error to permit an expert to testify over proper objections as to what is shown by an X-ray photograph *which is neither produced for inspection nor offered in evidence.* (Emphasis added.)

And 29 Am.Jur.2d Evidence, § 771 at page 841 (1967) provides: "If an object *is not to be received in evidence,* it should not be permitted to remain in the view of the jury." (Emphasis added.)

Although the exact nature of defendant's contention is unclear, we believe defendant also contends a proper foundation was not presented when plaintiff's income tax returns and prescriptions or cancelled checks for prescriptions were admitted into evidence. This Court has reviewed the transcript in this regard and find a proper foundation was laid and these exhibits were properly introduced into evidence.

### III

Defendant contends that the physical condition of plaintiff was not supported by medical testimony and that there was no evidence to justify the giving of Instruction Number 6. Defendant contends that their demurrer to the evidence should have been sustained because plaintiff failed to introduce medical testimony showing her physical condition or the causal connection of the disability with the drinking of the coca-cola.

The Supreme Court in *Jackson v. Cushing Coca-Cola Bottling Company,* 445 P.2d 797, held:

### Syllabus by the Court

In actions of legal cognizance a demurrer to plaintiff's evidence should be overruled unless there is an entire absence of proof tending to show a right to recover; and in passing upon a demurrer to the evidence, the trial court must consider true all of the evidence favorable to the party against whom demurrer is directed together with all inferences that may be reasonably drawn therefrom and disregard all conflicting evidence favorable to the demurrant.

The testimony of Dr. Buchan, Ms. Roeder, Mr. Santine and plaintiff, set forth supra, taking the evidence in the light most favorable to plaintiff and the proper inferences drawn therefrom, was sufficient to withstand a demurrer to the evidence on the grounds urged by defendant. As stated in *Jackson,* supra at 799, "medical testimony was introduced upon which a jury was entitled to consider the value thereof." Instruction Number 6 was the standard instruction pertaining to the computation of damages. We find no error in the trial court charging the jury with said instruction.

### IV

Defendant's last contention is that the $50,000.00 verdict was excessive. A verdict will not be interfered with by an appellate court where the issues have been fairly submitted under proper instructions. *Hampton v. Danks,* Okl., 387 P.2d 609. A reviewing court has no right to place limitations upon the amount of damages returned by the jury unless it is convinced that the amount of recovery bears no relation whatever to the evidence, or that it was induced by bias or prejudice on the part of the jury. *Tulsa City Lines v. Geiger,* Okl., 275 P.2d 325. See also *First Nat'l Bank of Amarillo v. LaJoie,* Okl., 537 P.2d 1207; *Vickers v. Ittner,* Okl., 418 P.2d 700.

In ruling upon the motion for new trial based upon excessive damages, the trial court made the following finding:

THE COURT: There's no question the damages were large in the mind of the jury. As to whether they were excessive, it's probably not up to this Court to say. They were within the limits of the testimony. There's nothing that transpired at the trial that leads the Court to believe the damages were given under the influence of passion or prejudice. It didn't appear to be any passion or prejudice

interjected into the lawsuit as far as the Court can remember.

From reviewing the record and transcript of this controversy, we agree with the conclusion reached by the trial court.

The jury was properly instructed as to the measure of damages, there was competent evidence reasonably tending to support the verdict, and it does not appear from the record that the jury was swayed by passion or prejudice. Hence, the verdict will not be disturbed on appeal. *Yellow Cab Operating Co. v. Spelce,* 177 Okl. 571, 61 P.2d 672.

Accordingly, the judgment of the trial court is affirmed in all respects.

AFFIRMED.

ROMANG and REYNOLDS, JJ., concur.