## MARGAY OIL CORPORATION v. JAMISON, Adm'r.

No. 25626. June 16, 1936.

Rehearing Denied Sept. 15, 1936.

Biddison, Campbell & Biddison, Allen, Underwood & Canterbury, and Paul Pinson, for plaintiff in error.

A. F. Moss and H. R. Young, for defendant in error.

OSBORN, V. C. J. This action was instituted in the district court of Tulsa county by Alexander Jamison, as administrator of the estate of Wesley Nathan Butterfield, deceased, against the Margay Oil Corporation, wherein it was sought to recover damages for certain injuries sustained by the said Butterfield which resulted in his death. The cause was tried to a jury and a verdict rendered in favor of plaintiff for $12,500. From a judgment thereon defendant has appealed. The parties will be referred to as they appeared in the trial court.

It is alleged by plaintiff that defendant is a corporation engaged in the business of producing oil and gas and manufacturing gasoline and casing-head gas from crude oil; that it owned and operated leases and properties in Creek county, Okla.; that on February 7, 1932, Butterfield, the deceased, was employed by defendant as a roustabout and pumper on said leases: that defendant owned and operated a treating plant or certain apparatus used for the purpose of improving the oil by removing salt water and other substances therefrom; that this plant was installed in a small building 11 by 12 feet and approximately 14 feet in height; that the apparatus consisted of a boiler, with flues running out through the top of the building, which was used to heat the oil; that gas was piped from the lease into the boilerhouse and was used for heating purposes. It was further alleged that at times the supply of gas would become inadequate and the fire in the boiler would become extinguished and thereafter the pressure would come on and gas would escape into the room without any fire to consume the same; that there was no automatic cut-off or valve to stop the flow of gas after the fire became extinguished and the only way in which the gas could be cut off would be for some person to turn the cut-off valve. Plaintiff further alleges that on the morning of February 7, 1932, the deceased, as a part of his regular duties, went to the boiler room and found that the fire was extinguished and that he thereupon closed the valve which let gas into the firebox and left the treating room and remained away for a reasonable time and returned thereto; that when he reached a place approximately even with the west side of the boiler an unexpected and violent explosion occurred and that he thereby became so badly burned and injured that he died on February 9, 1932. The general allegations of negligence are that defendant failed to furnish deceased a safe place in which to work and failed and refused to furnish the deceased safe instrumentalities and equipment with which to work; that the defendant was negligent in failing to keep an employee on duty at all times at the treating plant to regulate the flow of gas so that the treating house and boiler would not be filled with the unconsumed gas and gas fumes.

Defendant pleads contributory negligence, assumption of risk, and that the injuries received by decedent were the result of an accident unavoidable by the exercise of ordinary care on the part of defendant.

Among other assignments of error, defendant challenges the sufficiency of the evidence to support the verdict. We will briefly review the evidence.

One Olin Black testified in behalf of plaintiff that on the date of the injury of deceased, he, the witness, was employed by the defendant as a farm boss on the Hattie Vaughn lease located about a mile east and a mile south of Bristow; that it was the duty of witness to give orders to the deceased. The witness described the treating plant and testified that two kinds of gas were used as fuel therein, raw gas and residue gas. He further testified that no one stayed on duty during the night to see that

the fire was kept burning; that on the morning of February 7, 1932, the deceased went to the treating room about 6:20 o'clock; that witness was about 200 yards away from the plant at that time; that he looked in the direction of the treating plant and saw fire; that some of the fire was still and some of it was moving; that the moving fire appeared as if it were being carried by some person; that witness started running toward the plant and met deceased; that deceased said: "I am burned", and the witness replied: "You certainly are burned bad, Wes."; that witness asked deceased how it happened and deceased said that he went to the door of the house and saw that the fire was out under the boiler; that he then went in and closed the gate valve to cut off the gas and waited about five minutes, and while standing outside lighted a match and held it in and around the door and nothing happened, and that the deceased went into the room and when he got about even with the boiler on the west side thereof there was an explosion; when witness met deceased, deceased had been in the creek; that witness found the deceased's overalls and a part of his shirt in the creek; that when witness met deceased his clothing was burned across the hips, and his shirt and underclothes were pretty well burned off from his hips upward. The witness further testified that deceased was wearing canvas gloves and there were no burns on deceased's hands and the gloves were not burned; that deceased was not burned much below the belt.

One J. W. Strickland was called as a witness for plaintiff and testified that he was 58 years old and had been in the oil business practically all of his working years; that he had drilled a great number of oil wells and had some experience with treating plants similar to the one involved herein. By reason of his long experience the witness was allowed to testify regarding the propensities of gas; he testified that gas would settle in low and close places when air was damp; that he had examined the treating plant and was of the opinion that under the right atmospheric conditions gas would come out of the boiler and settle in the house; that if a man went into the house, turned the gas off, went out and stayed for five minutes, then struck a match and nothing happened and then walked in, it was possible for an explosion then to have occurred.

A number of witnesses were introduced by defendant to prove that certain experiments had been conducted at the plant by which it was ascertained that an explosion would not occur under the conditions related by deceased.

The theory of the defendant by which it seeks to support its contentions that deceased was guilty of contributory negligence is that deceased was negligent in turning on the gas and that when he kneeled down in front of the boiler for the purpose of lighting the gas it puffed out and caught his clothes, which were saturated with oil. In answer to this argument plaintiff points out that neither the gloves nor the hands of deceased were burned, which evidence does not harmonize with defendant's theory.

Plaintiff's theory is that during the night prior to the date of the injury to deceased, the gas pressure was lowered to the extent that the fire went out and thereafter the gas pressure was gradually increased, the gas escaped from the boiler and that a pocket of gas collected or stratified in the building, and on account of the atmospheric pressure at the time of the injury the pocket of gas so collected did not escape from the building although the door remained open for several minutes, and that when deceased re-entered the room said pocket of gas exploded. It is pointed out by plaintiff that when defendant conducted its experiments for the purpose of showing that gas would not collect in the building, the gas was turned on full force, which had the effect of creating a draft, and the gas so entering the boiler was carried through the flues to the outside of the building, whereas it is plaintiff's theory that on the date of the injury the gas came into the building under a low pressure. Defendant's criticism of plaintiff's theory is that under said theory there is no reasonable explanation as to how the gas was ignited.

It is the uniform holding of this court that a higher degree of care and vigilance is required in dealing with natural gas than in the ordinary affairs of life and business, and one who handles such a dangerous agency must use a degree of care to prevent damage from the escaping of gas which is commensurate with the danger which it is its duty to avoid. Julian v. Sinclair Oil & Gas Co., 168 Okla. 192, 32 P. (2d) 31. We quote from the body of the opinion in the case of Coffeyville Mining & Gas Co. v. Carter, 65 Kan. 565, 70 P. 635, as follows:

"Defendant was employing for its profit a subtle and highly explosive agency. The

rule at common law is, where an agent so introduced is controllable by care, attention, or science, he who receives the benefit must assume the responsibility. It is neither pleaded, nor was an attempt made to show, contributory negligence on the part of deceased. In this condition of the record it was wholly immaterial how the gas became ignited. In Koelsch v. Philadelphia Co., 152 Pa. 355, 25 Atl. 522, 18 L. R. A. 759, 34 Am. St. Rep. 653, it is held: 'The fact that an explosion of gas, which has accumulated in a cellar by negligence of a gas company, was caused by the act of a third person in lighting a match, will not relieve the gas company from liability.' "

The evidence shows that on previous occasions the fire had gone out underneath the boiler on account of a lowered gas pressure; therefore, the defendant, through its agents and employees, was charged with knowledge of the reasonable probability that gas would escape from the boiler into the boilerhouse. It is further shown that an automatic cut-off could have been installed which would have cut off the gas when the fire was extinguished in the boiler on account of low gas pressure. The trial court properly submitted the issues of negligence, contributory negligence, and assumption of risk to the jury, and under the evidence submitted, its findings on these issues are conclusive.

It is argued by defendant that since, under plaintiff's theory of the case, no satisfactory cause for the ignition of the gas is shown, plaintiff has failed to establish a causal connection between the negligence alleged and the injury sustained. We cannot concur in the view of defendant that the issue of proximate cause was thus raised. If the gas was ignited through any fault or negligence of deceased, an issue of contributory negligence was involved, and under the instructions of the court, the verdict of the jury absolved deceased of any fault in this connection. We have heretofore alluded to the dangerous character of natural gas and the degree of care required by one who handles such dangerous agency to prevent its escape. It was found by the jury that defendant had failed to exercise the requisite degree of care and was guilty of negligence, and that such negligence was the proximate cause of the injury sustained. We find no reason for disturbing such finding.

It is urged that the trial court erred in permitting the witness Black to testify to certain statements made to him by deceased immediately after the injury for the reason that said statements were no part of the res gestae. The admissibility of state-

ments as a part of the res gestae is largely determined by the facts and circumstances of each case and should in a great measure be left to the determination of the trial court. Standard Accident Ins. Co. v. Baker, 145 Okla. 100, 291 P. 962; Marland Refining Co. v. Snider, 120 Okla. 116, 251 P. 989. We have heretofore alluded to the testimony of Black. The evidence further discloses that when the clothing of deceased caught fire he ran to a creek about 40 yards from the boilerhouse for the purpose of extinguishing the fire; that Black ran about 200 yards and met deceased as he was returning from the creek. His testimony was that the conversation occurred within less than two minutes from the time of the explosion. There is no doubt but that deceased was in a state of great excitement and pain at the time. The element of spontaneity was not lacking. It is not necessary to refer to the various elements necessary to distinguish hearsay evidence and evidence properly admitted as a part of the res gestae. The authorities amply sustain the action of the trial court in admitting the evidence involved herein. See C., R. I. & P. Ry. Co. v. Owens, 78 Okla. 50, 186 P. 1092; Jackson v. Hedlund, 157 Okla. 14, 10 P. (2d) 385; Gibson Oil Co. v. Westbrooke, 160 Okla. 26, 16 P. (2d) 127.

It is urged that the trial court erred in permitting the witness Strickland to testify as to his opinion regarding the nature and propensities of natural gas for the reason that said witness was not qualified as an expert. It has been held that a witness' opinion is admissible as evidence not only where scientific knowledge is required to comprehend the matter testified about, but also where experience and observation in the special calling of the witness give him knowledge of the subject in question beyond that of persons of common experience. Prickett v. Sulsberger & Sons, 57 Okla. 567, 157 P. 356. In a case where the subject-matter is one with which the experience and common judgment of the jurors are insufficient to enable them to reach a proper conclusion and from the primary facts they cannot determine the ultimate facts or reach the proper conclusion which should be deduced therefrom, there becomes competent as evidence the opinion of one who from study and experience is an expert in such matters. Beasley v. Bond, 173 Okla. 355, 48 P. (2d) 299; Independent Material & Supply Co. v. Marshall, 129 Okla. 295, 264 P. 830; Tibbets & Pleasant, Inc., v. Cook, 143 Okla. 101, 287 P. 1014. The record shows that the witness was 58 years old and had been in

the oil business practically all of his life; that his experience was that of drilling and supervising the drilling of oil and gas wells and handling production from wells; that he had worked in this business in Oklahoma from 1917 to 1932, and in practically every oil field in Oklahoma; that he had previously had control of plants similar to the treating plant involved herein. This witness was amply qualified to render an opinion upon the nature and propensities of natural gas.

Various other assignments of error are made and argued in the briefs. They have been examined and are without substantial merit. The cause was fairly tried. The issues of fact were defined and submitted to the jury under proper instructions. We find no reversible error in the record.

The judgment is affirmed.

RILEY, BUSBY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur. McNEILL, C. J., and BAYLESS, J., absent.