HENRY CHEVROLET CO., Inc., v. TAYLOR.

No. 29083.    June 11, 1940.

Rehearing Denied Dec. 24, 1940.

Application for Leave to File Second Petition for Rehearing Denied Jan. 21, 1941.

*108 P. 2d 1024.*

Clayton B. Pierce and Truman B. Rucker, both of Oklahoma City, for plaintiff in error.

Hall & Thompson, of Oklahoma City, for defendant in error.

OSBORN, J. This action was instituted in the superior court of Seminole county by Nora V. Taylor, plaintiff, against Henry Chevrolet Company, Inc., defendant, for damages growing out of the death of plaintiff's husband. The cause was tried to a jury and resulted in a verdict and judgment for plaintiff in the sum of $12,000. Defendant has appealed. The parties will be referred to as they appeared in the trial court.

Plaintiff's decedent, Ollie R. Taylor, was employed by defendant as a janitor and car washer in defendant's garage at Konawa, Okla.; on August 17, 1936, the shop foreman, under whom Taylor worked, ordered him to clean out an acetylene welding machine, which was a part of the regular shop equipment. The drum of the welding outfit exploded while Taylor was cleaning it, killing him almost instantly. Plaintiff, in her petition, alleged that the decedent had had no previous experience in operating the apparatus; that the equipment was not operated regularly and was in bad condition; that defendant owed to decedent the duty of furnishing him with safe machinery with which to work; that defendant knew of the condition of the apparatus, but had negligently failed to keep same in good running condition; that defendant knew of decedent's previous lack of experience in the care and operation of such apparatus, but had failed to warn him of the danger involved in the operation thereof, and had ordered him to clean same; that such negligence on the part of the defendant, its agents, servants and employees was the proximate cause of decedent's death. Defendant's answer was a general denial, and plea of assumption of risk and contributory negligence.

Three general propositions are submitted by defendant for reversal:

"(1)   Failure of proof of actionable negligence proximately causing the accident.

"(2)   Errors in the instructions.

"(3)   Admission of incompetent prejudicial evidence."

The record reveals that there was evidence to the effect that plaintiff's decedent was not familiar with the operation of the acetylene generator; that the foreman, Butler, had told him to clean it, but had not instructed him regarding the possible danger in connection with such operation or of proper precautions necessary to avoid such danger. The witness Stephens, who owned and had for several years operated a similar acetylene outfit, testified regarding the operation thereof, and his testimony was to the effect that the gas generated in such apparatus is formed by placing carbide into a "hopper" holding some 25 or 30 pounds; this is released into a drum containing water, and a gas is formed by the contact of the carbide and water; when the carbide is so mixed and the gas released, there is formed a "sludge" in the bottom of the drum which must be removed at proper intervals; the operation is such that particles of carbide are sometimes buried in the sludge without having come in contact with water; the cleaning operation consists of removing the sludge and refilling the drum with water; due to the possibility of "live" carbide being buried in the sludge which would release a gas when water is contacted, care must be used to avoid the use of any tool which might generate a spark and thus ignite such gas when it is created by the cleaning operation, and cause an explosion. There was evidence that the decedent had never previously engaged in the operation of cleaning the generator, nor was he given any instructions regarding the proper manner of doing this with safety. There was no positive evidence as to the exact cause of the explosion, but there was evidence that some ten gallons of the sludge had been removed for a customer who desired to use it as a whitewash, and that the remainder of the sludge was caked and hard to the extent that the use of some in-

strument would be necessary to dislodge it. Witnesses testified that one should always use a wood stick or bronze rod for this purpose because of the danger of generating a spark should an iron rod be used. The evidence indicated that the generator had not been cleaned for some time, and Butler, the foreman, testified that he did not know whether the drum was cleaned every time the hopper was filled or not. Stephens, the ambulance driver, testified that he arrived within a few minutes after the explosion; that he was only one block away and was called immediately after the explosion; that Butler was standing to one side wringing his hands and in response to his question, "My God, what happened?" he (Butler) said he "let the generator go too long without cleaning it and it blew up and killed Ollie."

In Margay Oil Corporation v. Jamison, 177 Okla. 433, 59 P. 2d 790, this court quoted with approval from Coffeyville Mining & Gas Co. v. Carter, 65 Kan. 565, 70 P. 635, as follows:

"Defendant was employing for its profit a subtle and highly explosive agency. The rule at common law is, where an agent so introduced is controllable by care, attention or science, he who receives the benefit must assume the responsibility."

While in the quoted case the agency referred to was natural gas, in the instant case we are dealing with an acetylene gas generating plant, which is likewise employed by defendant herein for its profit, and is a highly explosive agency. It is argued by defendant that, since no satisfactory evidence was offered regarding the cause of ignition of the gas and the subsequent explosion, plaintiff has failed to establish a causal connection between the negligence alleged and the injury sustained. We cannot concur in the view of defendant that the issue of proximate cause was thus raised. If the gas was ignited through any fault or negligence of deceased, there was involved the issue of contributory negligence, and this issue was submitted to the jury under proper instructions, as was the issue of proximate cause. There was present a dangerous agency operated by defendant for its profit, and we have heretofore referred to the degree of care required of defendant in such case. It was found by the jury that defendant had failed to exercise the requisite degree of care and was guilty of negligence and that such negligence was the proximate cause of the injury. We find no reason for disturbing such finding. In this connection, see Margay Oil Corp. v. Jamison, supra.

It is also contended that the trial court erred in instructing the jury regarding the several allegations of negligence in plaintiff's petition on the theory that there was no evidence adduced in support thereof. In this connection, defendant relies upon Gypsy Oil Co. v. Ginn, 88 Okla. 99, 212 P. 314, wherein it was held that where several grounds of negligence are charged and there is an entire lack of proof on any, the trial court should withdraw such allegations from the consideration of the jury. From the resume of the evidence and the views expressed, supra, it is clear that that case has no application here. An examination of the instructions reveals that they substantially state the law applicable to the case.

Defendant complains of the introduction in evidence of a photograph of the generator, made after the explosion, for the reason that the picture showed the hopper was on top of the cylinder drum, when witnesses had testified that the hopper had been removed prior to the explosion. The record shows that the photograph in question was introduced merely to show the character of the drum. Counsel stated when objection was made to the introduction of the picture that it was introduced for this purpose only. The photograph admittedly showed the condition of the drum immediately after the explosion. It was clearly admissible for that purpose.

Defendant objects to a statement by the witness Stephens, admitted in evi-

dence over its objection. The statement is as follows:

"Well, when I drove in with the ambulance the boy was lying on the floor and I asked 'My God, what happened?' and he said he let the generator go too long without cleaning it and it blew up and killed Ollie."

It appears that the foregoing statement was within a few minutes after the explosion. Deceased was still on the floor of the garage and Stephens had just arrived with an ambulance. It is defendant's contention that the statement is a conclusion and not admissible for that reason. It seems clear that the statement was admitted upon the theory that it is a part of the res gestae, and we will confine our discussion to the question of whether the statement was properly admitted under the res gestae rule. This rule has been the subject of much discussion by this and other courts. In some jurisdictions the rule has been given a most strict construction, while in others, of which Oklahoma is one, a more liberal view is taken with regard to the application of the rule. In Margay Oil Corp. v. Jamison, supra, it was said:

"The question of the admissibility of statements as a part of the res gestae is largely determined by the facts and circumstances of each case, and should in a great measure be left to the determination of the trial court."

In view of our numerous decisions upon the question, it is not deemed necessary to enter upon a lengthy discussion of the rule. It is sufficient to say that admission of such statements is justified by the spontaneous nature of the statement, which is in itself a sufficient guarantee of the trustworthiness of such declarations to render them admissible, if they are made under the immediate influence of the occurrence to which they relate, and it is not necessary that the declarations be so strictly contemporaneous with the occurrence to which they relate as to be admissible under the so-called "verbal act" doctrine, the element of time being important only for the purpose of determining whether the declaration was made when the speaker was under the stress of nervous excitement as a result of the occurrence to the extent that the reflective faculties were stilled and the utterance therefore a sincere expression of his actual impressions and belief. See Wigmore on Evidence (2d Ed.) § 1750. This has been the tenor of numerous Oklahoma decisions upon the question. See Gibson Oil Co. et al. v. Westbrooke, 160 Okla. 26, 16 P. 2d 129; Feenberg Supply Co. v. Pierce, 185 Okla. 662, 95 P. 2d 640; Shawnee-Tecumseh Traction Co. v. Henry, 110 Okla. 160, 236 P. 894; Herring v. Hood, 55 Okla. 737, 155 P. 252.

In Feenberg Supply Co. v. Pierce, supra, the court said:

"* * * The facts and circumstances of each particular case must determine the application of the rule. It is sometimes very difficult for the trial court to determine whether the declaration is genuinely spontaneous and instinctive or not, even though it is made contemporaneously with the happening of the event which the declaration explains or about which it is made; and necessarily the trial court is given a wide discretion in admitting or excluding such testimony. Standard Accident Insurance Co. v. Baker, 145 Okla. 100, 291 P. 962."

We believe that the circumstances herein are such that the trial court did not abuse its discretion in admitting the declaration in evidence. As was said in Standard Accident Insurance Co. v. Baker, 145 Okla. 100, 291 P. 962:

"* * * Res gestae is a part of the thing which is to be proved. It consists of those statements made rather by the event than about the event, those expressions which grow out of and characterize the event and not a narration of a past event or comment upon it. There is no 'rule of thumb' by which such evidence is determined. Each event is governed by its own facts and circumstances."

The judgment of the trial court is hereby affirmed.

WELCH, V. C. J., and HURST, DAVISON, and DANNER, JJ., concur.