RIGDON & BRUEN OIL COMPANY and
Consolidated Underwriters Insurance
Company, Petitioners,

v.

Lonia F. BEERMAN and the State
Industrial Commission,
Respondents.

No. 38389.

Supreme Court of Oklahoma.

Sept. 22, 1959.

Rehearing Denied Nov. 10, 1959.

Covington, Donovan & Gibbon, Tulsa, for petitioners.

Arthur Meyer, Nowata, James Wm. Brown, A. D. Mason, Tulsa, Mac Q. Williamson, Atty. Gen., for respondents.

BERRY, Justice.

Lonia Beerman, hereinafter called claimant, widow of Lee E. Beerman, hereinafter called employee, obtained an award under the Death Benefit provisions of the Workmen's Compensation Act, 85 O.S.1951 § 1 et seq., for $13,500, the maximum death benefit award. This award was vacated in Rigdon & Bruen Oil Co. v. Beerman, Okl., 318 P.2d 458. On further hearing a maximum death benefit award was again entered and this proceeding was brought by Rigdon and Bruen Oil Company, employer, and its insurance carrier, Consolidated Underwriters Insurance Company, hereinafter called petitioners, to review the award.

Employee was a pumper for employer and on the morning of May 4, 1956, had been employed about his duties and came to his house on the lease of the employer at the noon hour. At approximately 12:30 p. m. he went into a power house about forty feet west of the house he was occupying as a home. He remained in this power house or in the vicinity thereof until shortly after 2 p. m. when he came into the house. Within thirty minutes he was dead. It is not disputed that he died of a heart attack. The power house contained an engine propelled by electricity. This engine had a belt ninety feet long and ten or twelve inches wide. It was part of the duties of the employee to see that the engine was running and the belt properly adjusted.

The time spent and the difficulties encountered in putting the belt on depended upon the condition of the belt and other factors. A witness was asked "How long generally, would it take to put the belt back on?" and she answered "If he didn't run into a lot of trouble it would probably take an hour, but it depended on the difficulty he ran into." The same witness testified that the employee was in the pump house working with the belt approximately two hours and that when he returned from the pump house he was "sweating" and "his hair was wet"; that his cap which he laid on the porch was wet with perspiration; that he then complained of pains and conditions that are associated with acute coronary occult thrombosis. This testimony tends to show that employee had considerable difficulty in tightening the belt and was subjected to more strain and exertion than he was usually subjected to in performing his duties, which testimony tends to corroborate the medical testimony to the effect that employee suffered an attack of acute coronary occult thrombosis while engaged in tightening the belt.

It is first argued that the award is based upon incompetent evidence because claimant was allowed to testify as to statements made by employee immediately before his death. In the course of her testimony the following transpired:

"Q. Would you tell the Court what you noticed, and what you observed? A. Well, when he came in I was vacuuming the rug and I didn't hear him come in, and when I looked up he was sitting in a chair, and I asked him, 'Are you through' and he said 'yes,' I said, 'are you ill' and he said 'no'. But he looked terribly ill to me, and white. I said 'Are you sure you are not ill' and he said 'yes, I got sick as a dog in the power house'.

"Q. Out where? A. The power house. And he said, 'I believe I will go out on the back porch to get a breath of air,' and I said, 'let me turn the fan on you,' and he said, 'I believe I will lay down,' and I said, 'why don't you lay on the bed,' and he said 'I am too dirty.' so I got a pillow and he laid down in front of the stove without any fire in it.

"Q. Then what happened, Mrs. Beerman? A. Then he said that it felt like maybe it goes from one side to the other, the pain, and then he said in a few minutes that it didn't hurt as bad, so I said, 'I will sit here and watch how you are doing, for you to rest a while.' and then immediately I heard him gasp and I jumped up and ran to him and I tried to raise him up, but I couldn't, so I pulled him across the table and set him up, I am sure he had passed away, and then I called the ambulance and asked them to call Dr. Prentiss at the hospital, and I ran to the bathroom to get a wash cloth to wash his face with ice water. Shortly after that the neighbors came."

and further:

"The Court: Mrs. Beerman, what did he say about being sick? When you talked to him about being sick, did he make any statement to you about it? A. I said 'did you finish your work,' and he said 'yes', and I said 'are you ill,' and he told me 'no', he didn't want to scare me, because of my health then. I could see that he was.

"The Court: Just tell me, did he say anything to you about anything that happened to him? A. He said that he became ill tightening the belt in the power house, and he said he became sick as a dog."

█ The testimony that we have set out relative to the conversation between employee and claimant following his return from the power house is admissible as part of the res gestae. Collins-Dietz-Morris Co. v. Richardson, Okl., 307 P.2d 159; Huffman v. Gaylor, Okl., 267 P.2d 564. In Huffman v. Gaylor, supra, it is stated:

"The question of the admissibility of statements as a part of the res gestae is largely determined by the facts and circumstances of each case, and should in a great measure be left to the determination of the trial court."

█ Testimony relative to what occurred prior to employee's going to the power house was properly rejected as hearsay.

It is also argued that under the provisions of 12 O.S.1951 § 385, subd. 3, claimant as the surviving spouse of employee was incompetent to testify. In making this argument petitioners apparently overlooked language added to said statute by a 1953 amendment. We quote the statute as amended in 1953, emphasizing the language added thereto by the amendment:

"The following persons shall be incompetent to testify:

"3. Husband or wife, for or against each other, except concerning transactions in which one acted as the agent of the other, *or in an action growing out of personal injuries to either spouse*, or when they are joint parties and have a joint interest in the action; but in no case shall either be permitted to testify concerning any communica-

tion made by one to the other during the marriage, whether called while that relation subsisted, or afterwards."

Under the cited statute as amended in 1953, claimant was not an incompetent witness.

■ It is next argued that the evidence is insufficient to support the finding that the death of the employee resulted from an accidental injury arising out of and in the course of the employment. In addition to the testimony set out above, claimant testified she watched out the window and saw employee working in the power house bending over the wheel working with the belt. The family physician who was called to see employee after he was taken to the hospital, testified by deposition and made a report based on the above testimony and stated that in his opinion employee died from a heart attack caused by the work he was doing at the time of the attack. It is argued the evidence of the doctor is incompetent because it is hearsay and not based on what actually occurred. We find it based on the evidence of what occurred. If the doctor had been asked a hypothetical question based on this evidence and had given his opinion it would not be questioned that his opinion would be competent. We hold that this is the effect of the doctor's testimony and report.

· Petitioners argue that the evidence was never introduced in the record. We think petitioners have overlooked the record. Part of this assumption in the brief of petitioners is due to the apparent fact that the brief of petitioners is in all respects the same as was submitted in Rigdon & Bruen Oil Co. v. Beerman, supra. In the proceeding in this case, by stipulation of the parties all the former record including the deposition and report of the physician was made a part of the record.

· ■ We are committed to the rule that disability due to strain constitutes an accidental injury and where it arises out of and in the course of employment is compensable under the Workmen's Compensation Act. Terminal Oil Mill Co. v. Younger, 188 Okl. 316, 108 P.2d 542; 1800 Restaurant, Inc. v.

Gossett, Okl., 287 P.2d 897; Choctaw County v. Bateman, 208 Okl. 16, 252 P.2d 465; State Highway Department v. Powell, Okl., 258 P.2d 1189, 1190. In State Highway Department v. Powell, supra, it is stated:

"Disability attributable to a condition of the heart is compensable under Workmen's Compensation Law in this jurisdiction if it originated in an accidental personal injury sustained in the course of hazardous employment covered by the act."

In Marby Construction Co. v. Mitchell, Okl., 288 P.2d 1108, 1109, it is stated:

"In establishing his right to workmen's compensation benefits a claimant is not restricted to direct evidence but may also use circumstantial evidence that is not so certain as to exclude every reasonable conclusion other than the one arrived at by the trial tribunal."

■ And in Tulsa Frozen Foods Co. v. Pendergraft, Okl., 317 P.2d 1115, it is stated:

"Whether an injury arose out of the employment is a question of fact and may be proved by circumstantial evidence."

■ There is competent evidence reasonably tending to support the finding that the death of the employee resulted from an accidental injury arising out of and in the course of his employment.

It is next argued that the finding of the State Industrial Commission is vague, indefinite and not susceptible of judicial interpretation. Petitioners cite Corzine v. Traders Compress, 196 Okl. 259, 164 P.2d 625; Adams v. City of Anadarko, 198 Okl. 484, 180 P.2d 159; Cummins v. State Industrial Commission, Okl., 264 P.2d 721; and related cases. In each of these cases the State Industrial Commission conducted a full and complete hearing and both parties had a trial on all of the issues and the Commission made a finding that the employee sustained an accidental injury arising out of and in the course of the employment. The award is not vague and indefi-

nite and is susceptible of judicial interpretation.

 It is next argued that the State Industrial Commission erred in failing to make a finding on the question of the failure to give the statutory written notice as provided by 85 O.S.1951 § 24. This presents another mechanical error in briefing due to the fact that substantially the same brief was filed in both cases. This proposition was sustained in Rigdon & Bruen Oil Co. v. Beerman, supra, and the case was reversed and remanded for further proceedings. Claimant offered testimony that the next day after the death the district superintendent of employer had a conversation with her at her home where he obtained full information about employee's death and indicated to her it was not his intention to discourage her seeking legal counsel in connection with any claim she might have against employer and she indicated to the district superintendent she expected to obtain legal advice about her right to obtain an award. It is not argued the finding of the State Industrial Commission on the issue of failure to give the statutory written notice is not supported by the evidence. In Jones v. Oliver, 204 Okl. 164, 228 P.2d 173, 174, it is stated:

"Under the provisions of 85 O.S.1941 § 24 the State Industrial Commission is authorized to excuse the giving of the statutory written notice provided therein; and if there is any competent evidence sustaining the finding of the State Industrial Commission that the employer has not been prejudiced by failure to give the statutory written notice, a finding thereon will not be disturbed on review."

There was no error in excusing the giving of the statutory written notice.

Award sustained.

WILLIAMS, V. C. J., and HALLEY, BLACKBIRD, JACKSON and IRWIN, JJ., concur.

JOHNSON, J., concurs in result.

DAVISON, C. J., and WELCH, J., dissent.