**SILVER SEAL PRODUCTS COMPANY and Federal Insurance Company, Petitioners,**

v.

**Verna OWENS and State Industrial Court, Respondents.**

**No. 46658.**

Supreme Court of Oklahoma.

June 4, 1974.

Ben A. Goff, Oklahoma City, for petitioners.

John Kennedy, Oklahoma City, for respondents.

SIMMS, Justice:

Ernest E. Owens died December 18, 1972 from complications induced by injury received during covered employment with petitioner, hereafter referred to as respondent. Claim for death benefits was filed by respondent, hereafter claimant, as surviving dependent widow. Respondents stipulated essential jurisdictional facts, but denied deceased's injury arose out of and in the course of employment. Although conflicting in some respects, medical evidence overwhelmingly established death resulted from medical incidents induced by, and causally connected with injuries received as result of a fall on respondent's ice covered parking lot on December 15, 1972.

State Industrial Court en banc affirmance of a trial judge's order awarding death benefits is basis for this proceeding for review.

The pivotal issue is whether deceased's statements to third parties following injury were admissible in evidence within recognized exception to the rule against hearsay testimony. Ancillary argument concerns whether, even if questioned testimony is admissible, claimant is entitled to award without other evidence to show deceased was injured in course and scope of employment. Argument presented necessitates summation of evidentiary matters assertedly constituting inadmissible hearsay statements, and purported improper evidence upon which to base an award.

Decedent, an active 62 year old man in good health and without chronic disability, was employed as a route salesman delivering respondents' products, leaving home each morning about 3:45 A.M. to report for work. About 4:15 A.M., on December 15th, another employee, Robert Quinn, saw deceased, in respondents' plant. Deceased was holding his left side, complaining of pain, and stated he had fallen on the ice, while alighting from his car in the parking lot, and believed he had broken a rib. Quinn told deceased he should deliver the early route, then advise the owner of this occurrence and see a doctor. Objection was sustained to other testimony from a blind concession stand employee, who was picked up and driven to work each morning about 5:00 A.M. by deceased, concerning deceased's statements about having fallen that morning.

The owner of Silver Seal Products Co., Mr. Sidney Hunt, saw deceased in the office about 8:15 A.M., upon deceased's return from his route. The weather was bad and the parking lot was icy. Deceased stated he had fallen while getting out of his car in the company parking lot, was complaining of pain and inability to drive the truck, and said he was going to the doctor. Deceased requested and received Hunt's agreement to service the remainder of the route. Hunt never saw deceased again after it was agreed he should see a doctor, but learned that he died two days later.

Respondents' assistant plant manager, Eric Bowen, had known deceased for 8 years as a capable and truthful employee, without complaint of illness until the morning of December 15th. Bowen was in the plant when deceased came in, and related having fallen in the parking lot. Deceased stated there was a problem breathing and raising his arms, thought it best not to drive, and was going to see a doctor. The witness had no personal knowledge of deceased's fall other than deceased's statements.

Claimant testified deceased returned home from work shortly after 8:00 A.M., in such pain he scarcely was able to walk. Deceased told claimant he parked, walked behind the car to enter the shop, and fell on his left elbow. Claimant immediately took deceased to a clinic, and found the family doctor absent, but another physician examined deceased and prescribed medication. After returning home, deceased con-

tinued to suffer pain, developed kidney dysfunction, shortness of breath, chest pains, labored breathing, and was unable to retain food or medication. Deceased's physical symptoms continued to deteriorate until Sunday night when taken by ambulance to hospital, where deceased expired shortly after arrival.

There were no witnesses to the claimed accidental injury. All the testimony relating to facts concerning the event, and claimant's testimony concerning deceased's statements to her, was allowed over respondents' objections that this evidence was hearsay and incompetent. Respondents acknowledge the exception to the rule against hearsay evidence which is applied when questioned statements are part of the res gestae. However, respondents' claim is that our decisions establish that while testimony of independent facts, i.e., expressions of pain, are admissible, other narrative statements by deceased to claimant concerning work activities, viz., the fall resulting in injury, was inadmissible hearsay. This argument basically derives from statements in S. W. Bell Tel. Co. v. Nelson, Okl., 384 P.2d 914, 921, (1963), discussed hereafter.

The practical impossibility of laying down a general rule decisive in every case which involves admissibility of hearsay evidence has long been recognized. Beaver v. Taylor, 68 U.S. (1 Wall) 637, 17 L.Ed. 601 (1864). This difficulty has not lessened through lapse of time and confusion of precedents. Wigmore on Evidence, 3rd Ed., § 1745, et seq. The confusion engendered by attempted application of the rule has led some courts to reject use of "res gestae" to describe spontaneous declaration, not only because it fails to contribute toward understanding the problem, but also because it may actually inhibit any reasonable analysis. People v. Poland, 22 Ill.2d 175, 174 N.E.2d 804.

■ These considerations have provoked a trend to enlarge scope of what may be considered res gestae statements, as an alternative for the more logical extension of hearsay exception to include statements not strictly res gestae, but made under circumstances which indicate trustworthiness of the statement. Jones on Evidence, 6th Ed., § 10.1 et seq. Apparent complexity of the problem has evolved two fixed principles in our decisional law. First, admission of evidence as part of res gestae is dependent upon facts and circumstances of the particular case. Second, a liberal construction is followed in Workmen's Compensation cases in applying the rule. Gulf Oil Corp. v. Harris, Okl., 425 P.2d 957 (1967); Allen Company, Inc. v. Grubb, Okl., 442 P.2d 492 (1968), and cases cited; 3 Larson's Workmen's Compensation Law, § 79.23.

■ To qualify as part of "res gestae", or spontaneous utterance exception, the statement must describe something seen, heard, or done by declarant in course of an event or transaction. Hence, recitals in a spontaneous utterance of facts and circumstances surrounding, and contemporaneous with, an occurrence may be admissible if relevant and sharing the characteristics of spontaneity. *Jones, supra,* § 10.1; 29 Am. Jur.2d § 708, et seq., and footnote cases. Text statements, and decisional law recognize the very nature of res gestae exception to the rule make spontaneity of the statement the prime factor governing the question of admissibility. See, Sand Springs Ry. Co. v. Piggee, 196 Okl. 136, 163 P.2d 545 (1945).

Contending the questioned testimony is inadmissible, respondents rely upon our decision in *Nelson, supra,* and unequivocally declare the rule in *Nelson* either controls here, or that decision must be overruled.

Although we agree with the results in *Nelson,* the vice in *Nelson,* which is reiterated by respondents as basis for argument, arises from language concerning a condition of "shock". This has resulted in the term being equated as determinative of admissibility, rather than as a recognizable factor bearing upon spontaneity of the testimony involved.

In a state of "shock", as used in *Nelson,* is a medical term: "A condition of acute

peripheral circulatory failure due to derangement of circulatory control or loss of circulating fluid and brought about by injury. It is marked by pallor and clamminess of the skin, decreased blood pressure, feeble rapid pulse, decreased respiration, restlessness, anxiety, and sometimes unconsciousness." See, Dorland's Illustrated Medical Dictionary at 1374, which enumerates some 53 separate, distinct types of shock. Determination of whether a spontaneous statement should be admissible in evidence would require skilled medical testimony concerning whether declarant was in shock, before spontaneity of the statement could be determined. This appears to be a qualitative factor engrafted upon existing law without necessity or authority.

Reference to "shock" in relation to res gestae statements first appeared in Wray v. Garrett, 185 Okl. 138, 90 P.2d 1050 (1939). Although syllabus rule was based upon recognized elements governing spontaneous statements, language concerning " * * * dominating influence of *shock* and *excitement* * * *", appeared in the body of that case. However, several decisions subsequent to *Wray* treated the problem only from standpoint of spontaneity of the questioned testimony. Sand Springs Ry. Co. v. Piggee, *supra*; Sinclair Oil & Gas Co. v. Cheatwood, Okl., 350 P.2d 944 (1960).

The decision in *Nelson, supra*, recognized spontaneous expressions of pain admissible as res gestae declarations. However, discussion was extended to other statements by deceased, and these were held inadmissible unless " * * * it can be said that he was in shock." Following further reference to "shock" *Nelson* then concluded all past communications between deceased and wife (claimant) " * * * were not spontaneous and instinctive while under shock and were not admissible as res gestae, * *." Although not previously a basis for determining admissibility of evidence, having appeared only as a descriptive term indicative of spontaneity, at this point "shock" was injected into our law as a controlling requisite for measuring admissibility of res gestae statements.

Later, this Court decided Arkansas-Louisiana Gas Co. v. Evans, Okl., 397 P.2d 505 (1964), and the decision was based on the general rule concerning admission in evidence of natural expressions and exclamations which are spontaneous because of pain suffered at the time. See Collins-Dietz-Morris Co. v. Richardson, Okl., 307 P.2d 159 (1959). In *Evans, supra*, circumstances were held sufficient to make declarant's statements admissible as spontaneously provoked by pain and suffering. The Court discussed admissibility of declarations from the standpoint of requisites for showing spontaneity of expression, as indicated in other decisions. Although unnecessary for decision, *Evans* included discussion of statements made while a declarant was in shock.

The *Evans* decision quoted and applied reasoning expressed in Parker v. Farmers Union Mut. Ins. Co., 146 Kan. 832, 73 P.2d 1032:

" * * * we think the rule touching the admissibility of hearsay evidence in workmen's compensation cases to be: Where a workman dies of his injuries, the statements he had made to third persons touching the accident which caused his injuries may be received and accorded probative force, if such statements are inherently reasonable and not intentionally made for the purpose of being used as evidence to base a claim for compensation, and where the other evidence and attendant circumstances corroborate the statements so convincingly as to establish the fact of the workman's accident and injury with moral certainty."

These decisions were followed by Gulf Oil Corp. v. Harris, Okl., 425 P.2d 957 (1967), wherein reasoning and quotation from other decisions correctly delineated factors to be applied for measuring admissibility of evidence as an exception to the hearsay rule. Discussion in that case, however, mentioned "shock" and then

adopted the syllabus from *Nelson, supra,* which specified "shock" as the factor for determining spontaneity of declaration. The statement in *Harris* concerning "shock" then was quoted in Allen Company, Inc. v. Grubb, Okl., 442 P.2d 492 (1968).

Reasonable implications of language in *Nelson* that declarant was not in shock, or that communications concerning past events were not admissible unless declarant was in shock, is that a medical condition must exist as prerequisite to spontaneity of statement. The term "shock" ordinarily is defined as indicating sudden agitation or excitement of emotional or mental sensibilities. Websters New Intl. Dict., 2nd Ed., 2317. If the latter was intended, the language used failed to convey this meaning.

██ Whatever connotation was intended, imprecise use of the term has brought confusion into our case law concerning res gestae statements. The net result clearly is evidenced by respondents' claim. Despite obvious corroborative circumstances, respondents insist deceased's statements concerning the accident were narative of past events and inadmissible, since there was no evidence showing deceased "was in a state of shock". Before *Nelson,* excitement and shock were circumstances or factors to consider in determining whether a statement was spontaneous. Since *Nelson,* the term "shock" is equated as the ultimate, controlling factor determinative of spontaneity of res gestae statements. Our law neither contemplates nor intends this result. The conclusion in *Harris, supra,* properly was based upon settled reasoning expressed in earlier decisions. See, Henry Chevrolet Co. v. Taylor, 188 Okl. 380, 108 P.2d 1024 (1940); and, Sand Springs Ry. Co. v. Piggee, *supra.* In *Piggee* we said statements are admissible as part of the res gestae: (1) when made at or near time of the occurrence; (2) when spontaneously made; (3) when provoked or influenced by happening of the accident itself so as to become a part thereof. The *Taylor* case declared admission of res gestae statements was justified by spontaneous nature of the.

statement, which provides sufficient guarantee of trustworthiness to render declarations admissible in evidence. Also see, Wigmore on Evidence 2nd, § 1749, that spontaneous or instinctive utterance made under circumstances calculated to provide a degree of trustworthiness, derive some credit independently of the declaration. We are of the opinion the basis for decision in these cases correctly define principles which govern admissibility of res gestae statements.

The decision in Southwestern Bell Tel. Co. v. Nelson, *supra,* no longer should be considered as expressive of law applicable to the issue. Insofar as that case purports to require a declarant to be in a state of shock before spontaneous statements, which meet other tests, may be admitted into evidence, that decision is overruled.

A further circumstance is an important consideration. The solitary nature of many workmen's duties preclude possibility of an injured employee having a witness available to prove happening of an accident. In *Harris, supra,* we quoted from Jacobs v. Village of Buhl, 199 Minn. 572, 273 N.W. 245, in support of the principle that strict application of res gestae rule would defeat intent of the Workmen's Compensation Act. Application of the Act cannot be limited to cases in which employees who die from injuries received in employment can produce an eye witness to accident. This principle is sound and in accord with reasoning expressed in our own decisions.

██ Facts and circumstances surrounding deceased's injury, coupled with evidence which corroborated matters related, were so inherently reasonable as to be received into evidence and accorded probative force to establish the fact of accidental injury with moral certainty. *Parker, supra.* The trial court correctly admitted this evidence as part of the res gestae. The award reviewed is supported by competent evidence.

██ Respondents also contend there was no testimony showing deceased was injured

within course and scope of employment. The argument is that, although deceased claimed to have fallen in the parking lot, there is no proof showing what he was doing at the time, or that he was going to work or taking the customary route, or that the accident was in course of employment. This argument is without substantial merit in view of our decision in Max E. Landry, Inc. v. Treadway, Okl., 421 P. 2d 829 (1966).

Award sustained.

DAVISON, C. J., WILLIAMS, V. C. J., and BERRY, HODGES, LAVENDER, BARNES and DOOLIN, JJ., concur.

IRWIN, J., concurs in result.